## HOUGHTON v. WHITIN MACHINE WORKS.

(Circuit Court of Appeals, First Circuit. February 12, 1907.)

No. 638.

1. PATENTS—REISSUE—INVENTION—THREAD-GUIDES FOR SPINNING MACHINES.

The Houghton reissued patent, No. 12,263 (original No. 753,577), for an improved thread-guide for spinning or twisting machines, was applied for within about four months after the granting of the original patent, which was within a reasonable time, and, in view of the broadened claims which were necessary to cover the actual invention, was a proper reissue. The improvement of the patent, which consists in substituting, for the wooden finger-heads of the prior art, heads made of metal accurately hinged and properly adjusted to a vertical metal strip secured to the face of a doffing-rail, making it possible to change the thread-guide from soft to hard wire, permitting an accurate adjustment of metal parts at the outset, and under such conditions as to secure continued accuracy of position in operation, constitutes a positive advance in the practical art of cotton spinning and twisting, and discloses invention of such character as to relieve the patent in a measure from the operation of the narrow rules of construction which apply to improvement patents that only slightly advance the art. Claims 1, 2, 3, and 4, also, *held* infringed.

2. SAME—INVENTION—SUBSTITUTION OF MATERIALS.

While the mere substitution of one material for another in a structure does not constitute invention, it is something to be considered on that issue, where it makes possible changes in other elements of a combination to produce improved operation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 23.]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

William K. Richardson and Louis W. Southgate, for appellant.

William A. Jenner, for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The patent in suit relates to cotton manufacturing, and the invention in question is for an improved thread-guide for spinning or twisting machines, and for an improved form of thread-guide support. It is a reissue patent, granted August 23, 1904, and numbered 12,263. The original patent was granted March 1, 1904, and numbered 753,577, and the application for reissue was filed July 16, 1904, about 4½ months after the original patent was granted.

Claim 4 of the reissue patent is precisely like claim 1 of the original patent of March 1, 1904. The proofs are only directed against the defendant as infringing claims 1, 2, 3, and 4 of the reissue patent. There is no substantial controversy about infringement so far as it relates to claims 1, 2, and 3; but infringement of claim 4 was disputed.

The reissue patent was attacked both upon the ground that it was invalid as a reissue, and upon the ground that its first four claims in suit did not involve invention.

We will first consider the question whether the reissue patent in suit involves invention.

We think it does.

Though the patent in its adaptation of parts involves the original and novel idea of a sheet-metal strip to which the finger-heads are attached, it is, after all, in substance and in its general effect, a patent for an improved combination of old elements in a mechanical arrangement which at once advances the art in a new direction. What the adaptation does in practical operation upon widely used machines in cotton spinning and twisting, old and new machines alike, as compared with the older adaptations, goes far towards demonstrating the fact of invention. Though the patent is for an improved thread-guide and an improved thread-guide support, rather than for a new and original discovery, its practical success is such as to entitle it to favorable consideration, and to relieve it in a measure from the operation of the narrow rules of construction which ordinarily apply to patents for improvements which only slightly advance the art, and accomplish only unimportant and inconsiderable results.

In the older art, the adaptation of construction can hardly be said to have approached the combination in question in simplicity and necessary accuracy of position of parts in operation. The following is a fair illustration of the old construction in common use:

It will be seen that, among the old constructions in use, there was a finger-head board or doffing-rail, which was hinged to the framework of the machine. To this individual blocks of wood, or thread-board supports for the thread-guide, were hinged, and into the projecting face of the finger-head, or block, a metal thread-guide was screw-threaded and adjusted to guide the thread. In practical operation, precision of position with respect to the axis of the spindle is necessary. The requirements of accuracy of adjustment in this respect are so arbitrary as to put out of question the use of hardened or rigid wire bent into pigtails as thread-guides, both in the process of original adjustment and in the process of readjustment when the same get out of position in operation. This is so because, when the

thread-guide is screwed into the finger-head, it is found not to be in the necessary exact adjustment for properly guiding the thread, and so must be bent in order to bring the eye of the guide in proper relation with the axis of the spindle; and, in practical operation, the guide gets out of position, and must be bent or turned back in order to properly do its work. This being so, soft or relatively flexible wire, as distinguished from spring-tempered wire, was used, in order that it might be restored to its position of usefulness by bending or hammering, or by hand manipulation.

Moreover, in the old constructions in practical use, the finger-heads which carry the thread-guides are in large numbers individually attached directly to the doffing-rail by a hinge and screws.

The cut which follows represents well enough one of the old type with the thread-guide screwed into a wooden finger-head, and the

thread-guide is represented by this cut as having been out of position, and as having been brought into position again by bending or other manipulation.

It would seem clear enough that upon cotton spinning and twisting machines carrying a large number of spindles, from which each thread under high speed must be accurately guided, greater security and precision than anything disclosed in the mechanisms of the older art was a thing needed in the work of spinning and twisting, and that industrial conditions required that, in the particular detail of guiding the thread from the spindle, the situation should be relieved from the clumsy and

unsatisfactory conditions existing in this respect at the time Houghton took out his patent.

Now as to the Houghton invention in suit. The claims in issue are as follows:

"1. In a spinning or twisting machine, the combination of a sheet-metal strip having places stamped therein for setting finger-heads, with the finger-heads hinged to said strip so that the thread-guides of the finger-heads will be in proper position when the strip is fastened in place in the machine.

"2. In a spinning or twisting machine, the combination of a rail or supporting-board with a vertical sheet-metal strip secured to the front face thereof, said sheet-metal strip having places stamped therein for setting the finger-heads, and with the finger-heads hinged to the sheet-metal strip and extending horizontally therefrom.

"3. In a thread-guide support for spinning or twisting machines, the combination of a rail or supporting piece, and a plurality of sheet-metal finger-heads, each formed from a piece of sheet metal bent to form a top plate, and bent-down portions which engage the vertical face of the rail or supporting-piece forming stops for holding the finger-heads in horizontal position.

"4. In a thread-guide support for spinning or twisting machines, the combination of a sheet-metal strip and a plurality of sheet-metal finger-heads, each formed from a piece of sheet metal bent to form a top plate, side flanges which act as stops for holding the fingerheads in horizontal position, and integrally bent or turned tongues which intermesh with bent or turned tongues extending from the sheet-metal strip to form hinged joints."

In the older practical constructions in use, we had the necessary wooden finger-heads and the necessary soft metal thread-guides with the inherent defects of insecurity of such appliances in respect to accuracy of continued adjustment. This situation was at once relieved by Houghton, because he made it possible to change the thread-guide from soft to hard wire, and the finger-heads from wood to metal securely hinged and properly adjusted to a vertical strip firmly secured to the vertical face of a doffing-rail. Houghton's adaptation thus relieved the situation from the necessity of using wooden finger-heads and soft metal guides, and permitted an accurate adjustment of metal parts at the outset, and under such conditions as to secure continued accuracy of position in operation. This, we think, constituted a very positive advance in the practical art of cotton spinning and twisting.

Quite likely the substitution alone of one material for another would not amount to invention, but the successful adaptation of the metal finger-head which made the use of highly tempered thread-guides possible is something to be considered in connection with the other elements of the combination upon the question as to whether what he did amounted to invention.

In a practical view, what the textile industry required was an accurate and reliable thread-guide which could be applied to old machines as well as new. It required something that could not only be placed in accurate relation to the machine and the spindle, but something which would remain permanently in proper relative position. Otherwise it would not reliably perform the necessary function of guiding the thread. The importance of such requirement is at once seen when it is realized that each machine in practical operation carries a large number of spindles which require some measure of personal oversight, and that the necessary personal oversight is minimized, and the work of the machine is augmented in degree according as any device for properly

guiding the thread becomes susceptible of accurate and permanent lateral and horizontal adjustment.

The leading features of the Houghton adaptation of mechanical parts can be most conveniently seen through the use of a cut illustrative of his device. For this purpose we employ, what is in substance, Fig. 1 of his reissue patent, supplemented by certain lines and words by way of description.

In this illustration we have one finger-head and the thread-guide in position, for doing its work, and another thrown out of working position, as is the case when necessary to splice the thread.

The metal vertical strip which has been spoken of as a new element in the combination is indicated by figures 10, and is something upon which a plurality of finger-heads are ingeniously spaced, gauged, and hinged in such numbers as are required. The strip when cut in proper length for a particular machine is attached to the vertical face of the finger-head board or doffing-rail by a series of screws, like 12 of the cut. This strip thus performs the function of furnishing suitable intermediate means for properly locating the finger-heads and of connecting the metal of the entire thread-guiding mechanism to the framework of the machine, and it also at once becomes a certain and fixed support to the finger-heads, because, when their side flanges abut against it, it becomes the means of accurately and permanently holding them in the necessary horizontal position.

Unquestionably, the success of Houghton's adaptation is in a large measure attributable to the relation which the new vertical strip sustains to the machine and the metal parts between that and the spindle. But, notwithstanding the fact that the vertical strip is new in its relation, and is something which in its setting performs useful and important functions, the invention, after all, resides, in a broader sense, in the conception of the combination, and in the exceedingly practical and meritorious adaptation of the various metal parts in a complete mechanical appliance capable of doing the work and of successfully meeting the requirements of an existing necessity.

In a very considerable sense, and from the very nature of things, every patent, so far as the fact of invention is concerned, is to stand, if it stands at all, upon its own inherent merit, and therefore a given situation is not much aided by authorities otherwise than by the rela-

tive measure of merit ascertained under somewhat unsatisfactory methods of comparison; but, if the ingenious barbed-wire twist, which "turned a failure into a success," was invention, surely what Houghton accomplished through a successful substitution of metal parts for wood and by way of an ingenious adaptation of hard-tempered wire and sheet metal parts, so assembled as to be easily adjustable to old and new machines alike, ought to be accepted as invention.

In the older type of construction, as will be seen by the first cut which we have used, the wooden finger-head was individually attached to the doffing-rail by a hinge and screws. Such attachment was so unreliable that it was necessary, as has been said, to employ a soft and flexible wire as the thread-guide, in order that it might be readjusted in necessary position as occasion required.

As pointed out, exactness, both in horizontal and in lateral or sidewise position, was something not only important but indispensable. In order to secure these results, Houghton describes finger-heads to be made from sheet-metal, to be hinged to a single vertical strip, the finger-heads having side flanges so bent and shaped as to engage the vertical strip, and thus secure and permanently hold themselves in the necessary horizontal position. Such security of horizontal position enabled him to use thread-guides made of hard-tempered wire, so attached to and carried in the finger-heads as to be susceptible of sidewise adjustment, and of being securely and permanently fixed in proper position with reference to the spindle. The connection between the finger-heads and the metal strip is secured by means of tongues or fingers extending from their rear edge, which intermesh with tongues or fingers extending from the upper edge of the vertical strip, the respective fingers and tongues coiling upon a hinge-pin extending the length of the strip, thus making a hinged connection between several finger-heads and a single metal strip easily adjustable to the vertical part of a given doffing-rail under such conditions as to enable the entire number of thread-guides to be thrown out of operation by an upward throw of the doffing-rail, or given thread-guides to be singly thrown out of operation if the exigency requires this only. While the hinge attachment to the metal strip is old, and in itself alone does not involve invention, in view of its peculiar setting it is something, we think, to be considered in connection with the various other parts with which it is associated in use in the mechanical adaptation as a whole.

As to the prior art, it is sufficient to say that it falls far short of anticipating Houghton's conception and efficient adaptation, or of accomplishing anything like the satisfactory commercial results reached through what Houghton described.

Next, as to the disclaimer. There was still another patent, to which we have not referred. It is numbered 677,988, and was granted to Houghton in 1901. Considerable importance has been attached to this, and it is something to be considered, because the reissue patent refers to it and makes a certain disclaimer. Both the patent of March, 1904, and the reissue of August, 1904, in fact, refer to the 1901 patent as something to be perfected and improved in construction. It is important to note that the sheet-metal strip described in the patent of 1901, to which the finger-heads were connected, was a finger-head board,

not an intermediate vertical strip, and the idea was to apply it to the top horizontal surface of the doffing-rail, and the mechanical arrangement in detail under that patent was quite different from the adaptations described in the reissue patent in question. It would seem that the Circuit Court acted upon the idea that the intended improvement of the reissue patent of 1904 had reference to tempering the thread-guide and to its adjustment in the finger-head. We think more than that was intended, and that the adaptation of parts in the patent in suit, which we have already described, was an essential and substantial improvement upon the patent of 1901. We also think that a reasonable construction of the disclaimer only carries the idea that Houghton intended to disclaim the subject-matter of the particular combination emphasized by the patent of 1901, which was a direct combination and attachment of a sheet-metal strip or finger-head board and a finger-head made with prolonged side flanges extending under and beyond the hinge for the purpose of horizontal support.

Now, as to the reissue: The somewhat recent case of Topliff v. Topliff, 145 U. S. 56, 12 Sup. Ct. 825, 36 L. Ed. 658, after summarizing the authorities, lays down certain rules as settled by the Supreme Court, and, among other things, it is there stated that the power to reissue may be exercised when the patent is inoperative, because the claims were narrower than the actual invention, provided the error arose from inadvertence or mistake. The right, however, is subject to certain limitations, and among them that the reissue shall be for the same invention, as it appears from the specification and claims, and that there must be reasonable diligence in moving. It is also stated as something to be regarded as settled by the Supreme Court that the court will not review the decision of the Commissioner of Patents upon the question of inadvertence, accident, or mistake, unless the matter is manifest from the record.

Mr. Houghton moved promptly for reissue upon discovery of what seemed to be a limitation of his new patent to the interlocking hinge, because he had the finger-heads interlocked with the thread-board in his 1901 patent. He set out in the oath appended to his application for reissue that the patent was inoperative for the reason that the specification was defective and insufficient, and that the defect and insufficiency resulted from an omission to claim the sheet-metal strip except in combination with a particular form of hinge, and that it arose from inadvertence. In view of the scope of the specification of the March 1904 patent and the limitation upon its claims, and in view of the broadened character of claims 1, 2, and 3 of the reissue, it would seem a proper case for reissue, provided there was due diligence on the part of the patentee. The application was made in a little over four months, which ordinarily would be accepted as not an unreasonable time, provided public rights have not intervened. We do not see anything in this case which should be accepted as a controlling intervention of public, or third party rights, or anything which calls for a harsh rule in respect to a time limit. In view of the whole situation, we think we should treat the reissue as seasonably applied for, and as something granted upon a proper showing of mistake, resulting from inadvertence in not giving proper breadth to the claims. The specification of the original patent, when read in connection with the cuts, mani-

festly shows that the patentee intended a broader invention than that stated in his claims; and what was stated as his invention in his specification was saved to him by the broadened claims 1, 2, and 3 of the reissue, and rightly so, we think.

With claims 1, 2, and 3 of the reissue comes claim 4 of the original patent, which gives prominence to the idea of intermeshing tongues and is verbatim with claim 1 of the original, and must have the same status as a claim that it had in the original patent. Gage v. Herring, 107 U. S. 640, 2 Sup. Ct. 819, 27 L. Ed. 601.

In conclusion, as to infringement: It is not seriously contended, even if denied, that claims 1, 2, and 3 are not infringed; and as to claim 4, the defendant's leading expert, Mr. Livermore, states that the defendant's construction, broadly considered as a hinge, is an equivalent, or mechanical substitute, for the construction shown in Houghton's claim 4 of the reissue. This, in connection with an examination of the various parts and their function as used in the defendant's construction, and the other evidence in the case, satisfies us that the complainant establishes that the defendant used the Houghton idea, and that there was infringement in respect to claim 4, as well as to claims 1, 2, and 3.

The decree of the Circuit Court is reversed; the case is remanded to that court, with directions to enter a decree for the complainant on claims 1, 2, 3, and 4 of the reissued letters patent, No. 12,263, in suit; and the appellant recovers his costs of appeal.