UNIVERSAL CASTER & FOUNDRY CO. v. M. B. SCHENCK CO.

(Circuit Court, D. Connecticut. November 25, 1908.)

· No. 1,202.

1. PATENTS (§ 141*)—REISSUE—VALIDITY.
   A patentee may extend his claims by a reissue, when the invention remains the same and there is no material change in the drawings and specification.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 208; Dec. Dig. § 141.*]

2. PATENTS (§ 328*)—ANTICIPATION—INFRINGEMENT—FURNITURE CASTER.
   The Diss reissue patent, No. 11,982 (original No. 654,956), for a furniture caster, was a legitimate reissue, within the invention disclosed by the specification and drawings of the original application, and was not anticipated, and is valid. Claims 1 and 2 also held infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

3. PATENTS (§ 328*)—INFRINGEMENT—FURNITURE CASTER.
   The Diss patent, No. 725,325, for a furniture caster, claim 2, held not anticipated, valid, and infringed.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

In Equity. On final hearing.

Binney & Ogden, for complainant.
Bartlett, Brownell & Mitchell, for defendant.

NOYES, Circuit Judge. This is a suit in equity to restrain the alleged infringement of reissue patent No. 11,982, dated May 6, 1902, and patent No. 725,325, dated April 14, 1903—both granted to Albert B. Diss for improvements in casters for furniture.

The inventions embraced in both patents relate to the casters used in metallic tubular legs of furniture, known as the "rectangular spring frame type." As the pintle of a caster is necessarily very small in comparison with the size of the tubular leg in which it is placed, it is

necessary to devise some method for holding and centering it in the leg and for supporting the weight of the furniture. This is effected in casters of the present type by a spring frame spanning the pintle and acting frictionally against the inner surface of the leg. The particular object of the invention in the reissue patent is thus stated by the patentee:

"Not only to insure the central position of the pintle, but to limit the movement that can be given to the spring frame heretofore employed and which spans the pintle within the tubular leg and to prevent undue strain upon said spring frame."

The claims of the reissue patent alleged to be infringed are as follows:

"1. The combination with the caster wheel, jaws, and pintle of a disk surrounding the pintle and upon which the tubular leg rests, a spring frame spanning the pintle, fitting within the tubular leg and acting frictionally against the inner surface of the tubular leg to hold the caster in place and prevent the same accidentally dropping out, and means for limiting the compressive movement of the free portion of said frame, substantially as set forth.

"2. The combination with the caster wheel, jaws, and pintle of a disk surrounding the pintle and upon which the tubular leg rests, a spring frame spanning the pintle and having a hole at its folded portion to receive the pintle near its free end, said frame fitting within the tubular leg and acting frictionally against the inner surface thereof to hold the caster in place and prevent the same accidentally dropping out, and means for limiting the compressive movement of the free portion of said frame, substantially as set forth."

The defenses to the reissue patent are: (1) Invalidity as a reissue, by reason of embracing a different invention from that of the original patent. (2) Invalidity by reason of anticipation in prior patents. (3) Noninfringement.

The claims of the original patent (No. 654,956, dated July 31, 1900) called for, as a distinct element, particular means for insuring the central position of the pintle. The specification and drawings described and showed a guide plate surrounding the pintle and carried upon the leg supporting disk. This guide plate fitted within the bottom of the tubular leg and thus centered the pintle. Obviously, however, other means than a separate device for insuring the central position of the pintle were readily available, and this requirement as an element narrowed the claim. The patentee, therefore, applied without undue delay, upon substantially the same specification and drawings, for a reissue, which was duly granted with the claims amended so as to embrace those already quoted. These amended claims omit the distinct leg-centering element of the original claims.

The reissue broadened the patent, but the invention was the same. The object of the patentee was accomplished as well by a structure in accordance with the claims of the reissue as by one in accordance with the original claims. The former merely permitted the accomplishment of the desired result with fewer distinct and separate elements than the latter. It is my opinion that the claims of the reissue might properly have been included in the original patent, and that the reissue was valid. Inventors have the right to extend their claims, when the invention remains the same and there is no material change in

the drawings and specification. Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658.

Taking another view of the case, the same result is reached. The reissue claims may be considered as covering a subcombination of the means for restricting the movements of the spring frame and as not embracing the leg-centering means. Such a subcombination may be covered by a reissue, although embraced in the original patent only as a part of the larger combination. In this aspect, also, the reissue was valid.

With respect to the contention that the provisions of the reissue statute were not duly complied with. it is sufficient to say that, in my opinion, a case is not presented warranting the overruling of the action of the commissioner.

The next question is whether the reissue patent was valid in view of the prior art. In examining this question we must look for prior patents which show a spring frame, spanning the pintle, with free ends of limited movement and a separate leg-supporting disk. These are essential elements of the reissue patent, and a prior patent which does not embrace them does not anticipate.

The prior Diss patent of 1890 is for a caster of the socket type, and has no spring frame and no leg-supporting disk. The weight of the leg comes upon the top of the pintle. The Neuberth & Ill patent (No. 556,020) has no spring frame analogous to that of the reissue patent. Two pieces of metal are fitted together to form a bulged cylinder, into which the pintle is driven. The Noelting patent (No. 626,439) is for a caster socket. There is no separate disk and no spring frame similar to that of the reissue patent. The Neuberth patent (No. 631,579) is for a caster of the tubular socket type, having a vertical tube with upwardly extending ears which contact with the inner surface of a tubular leg and prevent the caster from falling out. No spring frame spanning the pintle with free ends, whose expansive and compressive movements are limited, is present.

It appears, therefore, that none of the foregoing patents referred to by the defendants anticipates the reissue patent. The only other prior patents cited are Nos. 643,482 and 645,387 granted to Diss—the patentee of the reissue patent. But these patents had not been granted and the applications therefor were pending when the application for the original of the reissue patent was filed. These co-pending patents cannot be treated as anticipating, and the question of double patenting is not raised. Moreover, I am not satisfied that these patents, if earlier in date, would have anticipated. I do not find present the tangs and perforations for limiting the movement of the spring frame.

The defendant, however, contends that these two Diss patents, if not strictly anticipating, should be treated as dedicating the subject-matter of the reissue claims to the public. It is not clear, however, that such subject-matter is disclosed by the two patents referred to. Certainly, in my opinion, no case of dedication is made out sufficient to bar a legitimate reissue of the patent. This is in no sense a case where a patentee describes two devices, claims one, and thereby dedicates the other to the public.

The next question is whether infringement of the reissue patent is shown. It is evident that the defendant's device is similar to that described in the first claim of the reissue. Both have a caster wheel, jaws, and spanning spring frame, in combination with a separable disk surrounding the pintle and upon which the tubular leg rests. In both the spring frame has free ends, and acts frictionally against the inner surface of the tubular leg, and holds the caster in place. In both similar means are provided for limiting the compressive and expansive movements of the free ends of the spring frame. The defendant's structure also has a hole in the folded portion of the spring frame to receive the pintle, as required in the second claim of the reissue patent. It is therefore held that the defendant's structure infringes the first two claims of the reissue patent.

Only claim 2 of the second patent (No. 725,325) is claimed to be infringed. This claim is as follows:

"The combination, with the caster wheel, jaws, and pintle, of a disk surrounding the pintle and upon which the tubular leg rests, means for stiffening the said disk to enable it to act more perfectly as a support to the tubular leg, a spring frame spanning the pintle within the tubular leg and acting outwardly against the inner surface of the tubular leg to maintain the same centrally in position and the caster frictionally in the tubular leg, said spring frame having parts coacting with the said disk to limit both the expansive and the compressive movements of said spring frame, substantially as set forth."

The defenses as to this claim are: (1) Invalidity in view of the prior art. (2) Noninfringement. This claim is for a specific form of spring frame caster. It is much narrower than the reissue patent, and consequently the examination of earlier patents already made demonstrates that none of them anticipates; and the later Diss patents, referred to. but not particularly examined, come little nearer than the others. The patent is held to be valid.

The remaining question is whether the claim is infringed. This claim has four elements: (1) A caster wheel, jaws, and pintle; (2) A disk surrounding the pintle and upon which the tubular leg rests; (3) A spring frame spanning the pintle within the tubular leg and acting outwardly against the inner surface of the leg, maintaining the same centrally in position, and the caster frictionally in the tubular leg, said spring frame having parts coacting with said disk to limit both the compressive and expansive movement of said spring frame; (4) means for stiffening the said disk to enable it to act more perfectly as a support to the tubular leg.

It is obvious that the defendant's caster has the first three elements. I am also clearly of the opinion that it has the fourth element. The claim does not specify any particular means for stiffening the disk, and the corrugation of the defendant's disk furnishes a good illustration of means adapted to that end. It comes within the language of the claim; and even if the claim had employed more specific language, and designated the flanges—which the patentee merely preferred in his specification—as the means of stiffening, I am not at all certain that the corrugation would not be an equivalent therefor. Claim 2 of the second patent is therefore held to be infringed.

A decree in the usual form may be entered with respect to the first two claims of the reissue patent and the second claim of the second patent for an injunction, an accounting, and costs.