JOHN KITCHEN, JR., CO. v. LEVISON.

(Circuit Court of Appeals, Ninth Circuit. July 3, 1911.)

No. 1,900.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MANIFOLD BOOK.

The Levison reissue patent, No. 12,005 (original No. 694,103), for a manifold book, discloses patentable invention, especially in view of the recognized defects in the devices of the prior art which were remedied in that of the patent and its commercial success, and is also valid as against the claim that the reissue is a departure from the original. Also, *held* infringed.

2. PATENTS (§ 148*)—REISSUES—PRESUMPTION OF REGULARITY OF PROCEEDINGS.

From the reissue of a patent it is to be presumed that the law was complied with, and the proceedings can only be impeached for fraud.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 221, 222; Dec. Dig. § 148.*]

3. PATENTS (§ 236*)—INFRINGEMENT—LEAVES "BOUND" IN BOOK.

A manifold book, in which the carbon sheets are attached to a cardboard stub having a notched edge, the teeth of which may be pressed between the staples which bind the edges of the leaves together to hold the sheets in place, although such sheets are removable, does not escape infringement of a patent because the sheets are described therein as "bound" in the book.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 236.*

For other definitions, see Words and Phrases, vol. 1, p. 851.]

Appeal from the Circuit Court of the United States for the Northern District of California.

Suit in equity by Alexander Levison against the John Kitchen, Jr., Company. Decree for complainant, and defendant appeals. Affirmed.

The appellee was the complainant in the court below in a suit to enjoin infringement of letters patent No. 12,005, issued to him on July 1, 1902, for an improvement in manifold books. The court below sustained the patent, and enjoined the appellant from infringing the same. The invention relates to an improved manifold receipt and record book for mercantile, railway, express, or other business uses. The manifold book is formed in sections, each section comprising in order, first a carbon sheet of about two-thirds the width of the book, and, second, record sheets with stubs divided into three substantially equal parts by vertical lines of perforations, said parts having suitable printed matter and blank lines whereon to inscribe the desired record. The carbon sheets are carbonized on both sides, and are bound in the book, and extend over the first two of the divisions of the record sheets. In use the outer third of the record sheet is folded to the left on the line of perforations. It then covers about one-half of the carbon sheet. It is again folded in the same direction on the second line of perforations so that the carbon sheet is folded inside the record sheet. The record is then written upon what was the back of the middle portion of the sheet before it was folded. The carbon sheet being carbonized on both sides, a copy of the record will be made upon each of the two terminal parts of the sheet, also a backhand copy of the writing will be formed on the back of each part except the inner one. The claims held to be infringed are as follows:

"(3) A manifold book comprising in order a double carbon sheet, and a plurality of recording sheets, the record sheets outside the stubs being divided into three substantially equal separable parts, and the carbon sheet extending the width of two of said parts, said recording sheets having stubs to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which they are attached along lines of perforations, said stubs and one side of the carbon sheet being all bound together to form a book, substantially as described.

"(4) A manifold book comprising in order a double carbon sheet, and a plurality of recording sheets, each of said sheets outside the stubs being divided into a plurality, not less than three, of substantially equal separable parts. and the carbon sheet extending the width of said parts except the outermost, said recording sheets having stubs to which they are attached along lines of perforations, said stubs and one side of the carbon sheet being all bound together to form a book, substantially as described.

"(5) A manifold book comprising in order a double carbon sheet, and a plurality of recording sheets, each recording sheet outside the stub being divided into a plurality not less than three of separable parts joined along lines of perforations, each part being not greater than the part next it on the side toward the stub, and the carbon sheet extending the width of the whole of said parts except the outermost, said recording sheet having stubs to which they are attached along lines of perforations, said stubs and one side of the carbon sheet being all bound together to form a book, substantially as described."

Chas. E. Townsend, for appellant.

John H. Miller and Wm. K. White, for appellee.

Before GILBERT and MORROW, Circuit Judges, and WOLVER- TON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellant assigns errors to the decree of the court below on the ground: First, that the device of the appellee did not involve invention; and, second, that the appellant has not infringed the same. It is urged that the improvement which the appellee made on the prior art was simple and obvious. It may be conceded that it was simple, but that fact alone does not deprive the invention of patentability. There may be the highest form of invention in some of the simplest improvements on the prior art. What was the prior art in this class of inventions was shown by the record. For many years manifold receipt books had been used in connection with carbon sheets. One form of such books consisted of three sheets of different colors, one above the other; each having the same form of receipt printed thereon. To secure three copies of the receipt, two loose sheets of semicarbonized paper were inserted. Another form shows one corner of the original and one corner of the duplicate receipt cut off at different lengths to facilitate the handling of the loose carbon sheets. Another form shows the use of a sheet of yellow paper, then a sheet of thin transparent paper, and then a sheet of pink paper. On each of the sheets is printed the same form. The manifolding is done by the use of a single sheet, carbonized on both sides, inserted between the transparent sheet and the third sheet of the series. But the device which is principally relied upon by the appellant is shown in the patent to H. G. and J. B. Barlow of April 29, 1884. This patent anticipates the appellee's patent in every feature except one. Instead of having their carbon sheet bound in the book as in the appellee's patent, it was loose. The patentees pointed out the defects in the books of· the prior art, in which two detached sheets of copying paper had

been necessary to obtain two duplicates of the written matter. They said:

"The old method is objectionable on account of the number of sheets to be adjusted and cared for, and to the shipping clerk, who carries the sheets from place to place, the handling and care of the sheets is a source of great annoyance."

Eight years after the issuance of the Barlow patent, the appellee conceived the idea of binding carbon sheets with the stubs of the record sheets of the book, so that the carbon sheets would always be in their place. He also conceived the idea of inserting the sheets in the book at such intervals as the use and wear of the same would justify. The patent to James Bengough of January 28, 1896, shows a bound manifold salesbook, the first half of which is a series of single leaves which are one-half the length of the leaves of the remaining half. In the center between the two series of leaves are bound two carbon sheets of the same size as the leaves of the first half of the book. The book is used by beginning at the middle thereof. The first of the long leaves is folded over the second of the carbon sheets. The last of the short leaves is brought over the first carbon sheet. By writing thereon, two duplicates are made upon the two halves of the folded sheet. It is apparent that, long before the whole of the book is used, the carbon sheets are so separated from the leaves on both sides thereof that copies cannot be successfully taken. The patent to G. E. Doughty of October 11, 1898, is similar to the Bengough device, excepting that the carbon sheet, instead of being bound by stitching in the book, is held therein by a clamp. The patent to H. P. Brown of August 31, 1897, consists of the application by printing or other means, to the under surface of a sheet, of a nondrying transparent ink which serves to duplicate, upon the sheet below, any entry or mark made upon the face of the first sheet; a pad or cardboard being interposed below the last sheet on which it is intended the mark should be made. The evidence shows that the book was not received favorably for the reason that, as the back of each sheet was covered with the nondrying ink, the sheets smutted any paper or thing with which it came in contact.

In addition to the presumption which arises from the issuance of the patent to the appellee, there are to be taken into consideration, as sustaining his patent, the further facts that, when his invention was made, there was a want in the art for such a device, that in the prior art there were well recognized and admitted defects, and that the appellee's device eliminated those defects and went into general and successful use. In view of all these considerations, we find the evidence insufficient to overturn the finding of the court below that the appellee did exercise inventive faculty in devising the book for which he obtained his patent.

It is contended that the reissue of the patent is void as being a departure from the original, and not for the same invention, and as containing new matter not authorized by the statute. The argument is that in the original patent there is no claim for three separate substantially equal parts, and that in the original specification there is

nothing to indicate that the divisions of the record sheets shall be equal. It is true that in the original patent it is not said, in either the specifications or the claims, in express terms, that the sheet is to be divided by the perforations into substantially equal parts; but the drawings in that patent are identical with the drawings in the reissue patent. In those drawings it is plainly to be seen that the parts are substantially equal. The specification describes the record sheet "divided into three parts by vertical lines of perforations," and describes the carbon sheets as of sufficient width to cover two of said parts, and it says, when the record sheet is first folded, it covers about one-half of the carbon sheet. It is too obvious to require argument that the device in both patents is the same. A patentee by a reissue is not permitted to extend the invention which he described and intended to be protected in his original patent. In the original patent in this case the features of the appellee's invention are clearly described. One of them is the use of the cardboard backings. The other is the arrangement of the record sheets and the carbon sheets. Both are covered by a single claim, but the patent did not cover the use of either when not combined with the other. Therein was its defect. In applying for his reissue, the appellee in his affidavit set forth the facts constituting the inadvertence by reason of which the claims of the original patent were not commensurate with the scope of his invention.

[2] From the reissuance of the patent it is to be presumed that the law was complied with, and the proceedings can only be impeached for fraud. In Seymour v. Osborne, 11 Wall. 516–543 (20 L. Ed. 33), it was said:

"Where the commissioner accepts a surrender of an original patent, and grants a new patent, his decision in the premises in a suit for infringement is final and conclusive and is not re-examinable in such a suit in the Circuit Court unless it is apparent upon the face of the patent that he has exceeded his authority, that there is such a repugnancy between the old and the new patent that it must be held as matter of legal construction that the new patent is not for the same invention as that embraced and secured in the original patent."

[3] A more serious question is presented in the appellant's contention that the court below erred in holding that the appellant has infringed the appellee's patent. There is force in the argument that the appellee's invention, in view of the prior art, lies in a narrow compass, and that the appellant's carbon sheets, if they are bound in the book, are bound in a different way from those of the appellee. But, after all is said, it nevertheless is apparent that the appellant's carbon sheets are bound in the book. It is true that they are not permanently bound, and that they may readily be removed; but the appellee's claims do not in terms call for a permanent binding. The appellant's book is made up of recording leaves, each divided into three sections by vertical lines of perforations, as are those of the appellee. The leaves and cover of the book are bound together by staples. The double carbon sheets are attached at one end to a cardboard strip with notches opposite the staples to allow of their being inserted in the book. They are pushed in underneath the cover of

the book, and between and on either side of the staples. In the appellant's patent which was issued on February 9, 1909, it is said:

"The pressure on the points 11 of the stub strip, after the latter has been inserted, will hold the carbon permanently in position."

And again it is said:

"They are held firmly in place just as though they had been bound in the book originally."

According to the evidence, there are various known methods of binding, as by binding by a clamp, by glue or paste, or by pressure, as well as by sewing or stitching. In the appellant's patent no specific means for binding or holding the carbon sheets in the recording sheets is described. The claims are broad enough to cover any binding means. The patentee of the appellant's patent, testifying as to the Doughty patent, in which the carbon and stubs of the recording sheets are held in a wire frame which is attached to the cover of the book, said that the carbon sheet in that patent is "bound in the book" by a spring. We think that it is immaterial that the carbon sheets in the appellant's patent are detachable from the book, or that they are bound in the book after the book is made up. They are to all intents and purposes, when the book is in use, bound in the book within the meaning of the appellee's claims.

The decree is affirmed.