COLDWELL–GILDARD CO. et al. v. STAFFORD CO.

(District Court, D. Massachusetts. June 27, 1912.)

No. 156 Equity. (C. C. No. 683).

1. PATENTS (§ 141*)—REISSUES—NEW CLAIMS FOR SEPARATE AND DISTINCT PARTS OF INVENTION.

Under the provision of Rev. St. § 4916 (U. S. Comp. St. 1901, p. 3393), authorizing reissue of defective patents, that "the Commissioner may, in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant," he may also allow new and separate claims for such separate and distinct parts.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*

Grounds for reissue of patents, see note to General Electric Co. v. Richmond St. & .I. Ry. Co., 102 C. C. A. 145.]

2. PATENTS (§ 141*)—REISSUE—VALIDITY—IDENTITY OF INVENTION—"SAME INVENTION."

The question whether a reissue patent is for the "same invention," within Rev. St. § 4916 (U. S. Comp. St. 1901, p. 3393), should be considered not merely as a verbal question, but as a substantial question to be solved by reference to the structure itself as well as to the specification and claims. The reissue may properly correct insufficiency of description of what is clearly shown in drawings as an obvious feature of the structure and may add claims adequate to protect the substance of an inven-

tion or inventions that fairly appear in the original and which the inventor sought to protect.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 206–213; Dec. Dig. § 141.*

For other definitions, see Words and Phrases, vol. 7, p. 6323.]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—STOP-MOTION FOR LOOMS.
The Coldwell & Gildard reissue patent, No. 11,923 (original No. 637,234), for a stop-motion for looms, covers, as did the original, as a separate invention, a special form of drop-bar capable of use with either mechanically or electrically operated stop-motions which discloses patentable invention and merit in that it prevents the chafing of the warp threads. Such feature is more fully covered in the new claims of the reissue, which are within the invention of the original patent, and valid; also, *held* infringed.

In Equity. Suit by the Coldwell-Gildard Company and others against the Stafford Company. On final hearing. Decree for complainants.

Fish, Richardson, Herrick & Neave, for complainants.
William A. Copeland and Wilmarth H. Thurston, for defendant.

BROWN, District Judge. This is a bill charging infringement of reissued letters patent to Coldwell & Gildard No. 11,923, July 30, 1901, applied for October 3, 1900. The original patent is No. 637,234, applied for November 17, 1898, granted November 21, 1899.

Claims 19 to 30, inclusive, excepting claim 26, are in issue. These are new claims not found in the original, but first found in the reissue. In the original the specification states:

"Our invention relates to improvements in stop-motions for looms, and particularly to that class wherein an electrical current is employed for setting the stop-motion and is established by the breaking of one or more warp threads."

Excepting claims 1 and 2 for a special drop-bar as an article of manufacture, the claims of the original patent are for an electrically operated stop-motion. There clearly appears an intention to claim the drop-bars themselves as an invention distinguishable from the combination of these drop-bars with electrical means for operating the devices that stop the loom.

The claims in suit are not limited to electrically operated stop-motions, but relate principally to an arrangement and construction of drop-bars suitable for use with mechanically operated stop-motions as well as with electrically operated stop-motions. The defenses are (1) invalidity of the reissue, (2) anticipation, (3) noninvention.

The general principle of the warp stop-motion is that the breaking of a thread serves to release a drop-bar whose fall actuates a device which stops the loom. Drop-bars hung upon warp threads, released by the breaking of the thread, and serving by their fall to actuate mechanical or electrical agencies and thus stop the loom, were very old. The art is full of such devices, and it is said that prior to 1908 there were in different countries about 200 patents for warp stop-motions.

The defendant's brief states that in the prior art were two general forms: Mechanical stop-motions in which the dropping of a drop-bar stops the loom solely by mechanical means, and electrical stop-motions in which the dropping of the bar closes an electric circuit, thus actuating the stopping device.

In the original patent is shown an electric circuit normally open, but closed upon the breaking of a warp thread through the fall of its drop-bar. The complainants state that the original patent discloses an arrangement and construction of drop-bars which is new and valuable in that it prevents the chafing of the threads; that this is equally valuable whether the loom is "knocked off" by electrical or by purely mechanical means; and that the drop-bars are used by the parties complainant in both ways.

It is said that the danger of breaking threads was real, and that it was highly desirable that the drop-bars, introduced to detect breaks, should not themselves be a cause of breakage by chafing the threads.

The Coldwell & Gildard invention, it is said, is the culmination of the art in this direction, "since each thread is exposed to only the slight friction of a single light drop-bar which is free to vibrate up and down or transversely, and is wholly relieved from the crowding and chafing effect of the adjacent drop-bars."

That there is substantial merit in the anti-friction feature is satisfactorily shown by the testimony of practical men and by the extensive use of the invention. This feature is especially valuable with soft and delicate threads and in the manufacture of high sleyed goods with from 96 to 128 threads to the inch.

The application for a reissue was filed a little more than 10 months after the date of the original patent.

It is not disputed by complainants that the claims of the reissue and of the original are of very different scope. It is said, however, that the claims added by the reissue cover the warp stop-mechanism shown in Fig. 5 and described in the original specification, without the unnecessary limitation to electrical connections and with express reference to avoidance of chafing.

The right is asserted to make these claims as for new and useful subcombinations of the entire Coldwell & Gildard machine not adequately protected by the original patent.

The defendant contends that each original claim, except claims 1 and 2, is limited to electrical operation and is for an organized stop-motion, and includes the parts necessary to close the circuit, and that no one of the new claims is for an organized stop-motion; that each new claim of the reissue is for a combination different from the combinations of the original patent and therefore for an entirely different invention. It is also said that each claim is for an invention different from anything pointed out or referred to as an invention in the original Coldwell & Gildard patent. It is further argued that the patentees never had any idea or conception of using these parts in a mechanical stop-motion, but that this was a subsequent discovery made by others after the issue of the original patent.

Upon the question of the known or obvious applicability of the drop-bar arrangement for use otherwise than in an electrical combination, the briefs touch very lightly; both briefs make the statement, however, that it was well known that the fall of a drop-bar could stop a loom either by closing a circuit or by coming into the way of some reciprocating part. The testimony of defendant's expert Randall is cited to that effect.

As bearing upon the question of the right to reissue, however, it should be noted that in the original as well as in the reissued patent there are claims for the drop-bars as an invention independent of the combinations in which the drop-bars are elements, and that there is in the original a reference to the subject of chafing which seems inaccurate and inadequate and properly amendable. The amendment in this particular, which makes special reference to the shape of the drop-bars in connection with the subject of chafing, cannot be said to be the improper introduction of new matter, but rather a permissible correction of an inaccurate and inadequate description. The defendant is not charged with infringement of the drop-bar claims since claims 1 and 2 are each limited to a special form of drop-bar not used by the defendant. In view of the testimony as to the use of both mechanical and electric devices to stop the loom, infringement of claims 1 and 2 could not be avoided by using drop-bars of the special construction shown to actuate purely mechanical means to knock off the loom.

The evidence shows that the drop-bars themselves are applicable to both forms of stop-motion. Drop-bars are so old a device that the claims 1 and 2 for "drop-bars" could hardly be limited to mere parts of an electrical combination, or to drop-bars only when used in an electrical combination. It may be said, therefore, in respect to the defendant's contention that the patentees never had any idea or conception of using these parts in a mechanical stop-motion, that they claimed certain parts broadly as "drop-bars" without limitation. Presumably they are claimed in the ordinary significance which these terms have in the art.

In considering the question of the validity of the reissue we must look at the original patent as a whole, to the description and claims for improved drop-bars, as well as to the claims for electrically operated stop-motions.

[1] By reason of the limited and specific character of the claims for drop-bars, the patent as originally issued did not secure to the patentee what is proved to have been a feature of much practical importance—the anti-friction feature. This involves not only the shape and character of the drop-bars, but the mode of their suspension and their location in respect to the warp thread. If we regard the new claims as for the drop-bars in the specific location and arrangement shown in the original patent, this is not new matter, but is making the claims correspond to what is clearly shown. As the original patent has claims which are not limited to an electrical connection, there seems no reason why the reissue patent should not also have additional claims that are not so limited, provided they do not come

within the prohibition of new matter and otherwise comply with the conditions of the reissue section. Section 4916, Rev. Stats. One provision of that section is:

"The Commissioner may in his discretion, cause several patents to be issued for distinct and separate parts of the thing patented, upon demand of the applicant," etc.

If this may be done in several patents, why may it not equally well be done in separate claims for such separate and distinct parts?

The cases as to reissue under section 4916 are very numerous and difficult of reconciliation. The complainant relies on Topliff v. Topliff, 145 U. S. 156, 12 Sup. Ct. 825, 36 L. Ed. 658, to support the right to a reissue with new or broadened claims to cover an invention set forth in the original patent.

Complainants contend that, where the original patent lacks claims to cover properly an invention therein set forth, it is "inoperative by reason of a defective or insufficient specification." They cite also the decision of the Circuit Court of Appeals of this circuit in Houghton v. Whitin Machine Works, 153 Fed. 740, 83 C. C. A. 84; Jenkins v. Stetson (C. C.) 32 Fed. 398; Universal Caster & Foundry Co. v. M. B. Schenck Co. (C. C.) 165 Fed. 344; John Kitchen, Jr., v. Levison, 188 Fed. 658, 110 C. C. A. 424; Crown Cork & Seal Co. v. Aluminum Stopper Co., 108 Fed. 845, 48 C. C. A. 72; Hobbs v. Beach, 180 U. S. 383, 394, 21 Sup. Ct. 409, 45 L. Ed. 586.

Section 4916 expressly recognizes that rights to a reissue may exist for distinct and separate parts as well as for "the thing patented." Of course, it is familiar law that in one patent may be many inventions each the subject of a distinct claim. Leeds & Catlin v. Victor Talking Machine Co., 213 U. S. 301, 29 Sup. Ct. 495, 53 L. Ed. 805.

Counsel for the complainants well states the difficulty which arises upon attempting to determine from the original claims the question whether the reissue is "for the same invention."

"Of course, if the words of the reissue statute, providing that the Commissioner may cause a new patent to be issued 'for the same invention,' should be pushed to their logical extreme, it would render the reissue statute an absurdity. The reasoning would run as follows: The invention patented is that which is covered by the claims; therefore, if the claims are broadened or changed in any material particular, the new patent is not 'for the same invention.' This would, of course, reduce the law of reissues to the mere correction of evident blunders in the drawings or description (which are of comparatively infrequent occurrence), and would deprive the statute of any substantial beneficial effect."

[2] The question whether the reissue is for the "same invention" should be considered not merely as a verbal question, but as a substantial question to be solved by reference to the structure itself, as well as to the specification and claims. The reissue may properly correct insufficiency of description of what is clearly shown in drawings as an obvious feature of the structure, and may add claims adequate to protect the substance of an invention or inventions that fairly appear in the original, and which the inventor sought to protect. A proper distinction is to be drawn, of course, between cases of this

character and cases in which it is sought to make over an old patent, and by ingenious afterthought, either with the assistance of new matter or by a new version of old matter, put into a patent what was not there before. Here there seems to be merely a legitimate attempt to set forth, in proper and sufficient terms, and to claim that which can be verified by reference to the structure itself as well as to the terms of the patent.

[3] The invention of the patent in suit is for a refinement upon a generic combination of which numerous examples may be found in the prior art. That the avoidance of the breakage of the warp thread, through the friction of parts of the stop-motion device, was an important matter, is established by the evidence. The avoidance of friction is a characteristic of the structure originally described. It is due in part only to the form of the upper end of the drop-bars for which claims were made as an independent invention. It is the form of the drop-bars in connection with their mode of suspension which obviates friction, and this appears from an examination of the loom equipped with complainants' drop-bars.

The structure divides itself naturally into two parts: (1) The drop-bar with the new form of its upper end and its mode of suspension, with the means for disposing the threads; and (2) the device which is brought into action by the fall of the drop-bar to stop the loom. The drop-bar must be of such construction as not to interfere with the ordinary operation of the loom before the breaking of the warp thread.

The original claims for the drop-bars relate to a part whose form is designed with this in view. The new claims now in suit merely add to this the parts which co-operate to this end, and cover more completely the means described in the original patent for preventing the drop-bars from interfering with the operation of the loom. This aspect of the structure is separable, and embodies, in my opinion, a patentable improvement. There seems to be no valid objection to the allowance of claims to cover this as an invention separable from the combinations which include the electrical means to actuate the device which stops the loom. The original drop-bar claims are not adequate to cover fully this feature, nor are the electrical combination claims; but I see no reason for holding that upon the reissue all new claims should be limited by including electrical features.

The fact that the insufficiency of the patent as originally granted may have been pointed out to the patentees by third persons, or that the patentees may have been induced by third persons to make application for the reissue, does not seem to me of controlling importance, if the subject-matter of the new claims is fairly apparent in the original. The application for reissue was timely; within 10 months of the original issue.

The separate claims for drop-bars contained in the original patent are inconsistent with the contention that the patentees had no other conception than the specific electrical combinations of the claims. As clearly they did not intend to abandon the claim that the drop-bars in themselves constituted an invention, we should not impute to them

an intention to abandon the arrangement and location of their drop-bars whereby they could gain the advantages due to the special form of the drop-bars.

The reissue was regarded as warranted after an extended consideration by the examiner. I see no reason for coming to a different conclusion, even if there is matter in the record which might perhaps justify a review of the decision of the Commissioner upon the question of inadvertence, accident, or mistake. Topliff v. Topliff, 145 U. S. 156, 171, 12 Sup. Ct. 825, 36 L. Ed. 658.

The defendant relies principally upon the following patents of the prior art: Bigelow, No. 18,320, of 1857; Burlock (British patent) No. 59, of 1875; Howard & Bullough (British patent) No. 1948, of 1862; Rosseau (French patent) No. 81,118, of 1868; Wyman & Clark, No. 631,241, of 1899. These patents emphasize what we have said; that the claims in suit relate to refinements in a crowded art. The generic combination of the warp stop-motion is old, but no one of the prior patents contains the Coldwell & Gildard anti-friction features which practical men have asserted to be of great value. The very extensive use of these devices, and especially their use on fine and delicate fabrics, shows that the refinement was of practical value and a substantial advance in the art.

I am of the opinion that the claims in suit are valid and infringed. A decree may be presented accordingly.