BERRY v. WYNKOOP–HALLENBECK–CRAWFORD CO. et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1898.)

No. 24.

PATENTS—INVENTION—SAFETY CHECKS.
 The Berry patent, No. 268,988, for an improvement in safety checks or other papers representing value, consisting in the use of marginal tables of figures comprising one or more compound columns, each composed of two or more simple columns of figures of different denominations, the simple columns being arranged out of line with and one below another, is void for want of invention, in view of prior United States patent No. 163,462 to E. Rezean Cook. 77 Fed. 833, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

The complainant's bill in equity in the circuit court for the Southern district of New York alleged the infringement by the defendants of letters patent No. 268,988, dated December 12, 1882, and issued to Marcellus F. Berry, for an improvement in checks or other papers representing value. This appeal is from the decree of the circuit court, which dismissed the bill upon the ground of the invalidity of the patent for want of invention.  77 Fed. 833.

W. Laird Goldsborough and Edwin N. Brown, for appellant.

Wallace Macfarlane, U. S. Atty., and Robert Grier Monroe, Asst. U. S. Atty., for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.  The patentee, in his specification, described the relation of his improvement to the preexisting art as follows:

"My invention is applicable to checks, certificates, and other papers which are filled out for certain amounts of money, and which it is desired to prevent being raised or changed so as to call for different amounts from those for which they are made out.  Various plans have been proposed for this purpose; but my invention relates to that class of safety checks and analogous papers which are provided with marginal tables of figures of different denominations, and which are to be torn through the tables, so as to indicate exactly or approximately the amount for which the check or paper is intended.  My invention consists in a novel formation of, or arrangement of, the figures in these tables, whereby the tearing through the tables is facilitated, and a check or paper is produced which may be more conveniently used, and which will afford greater security against fraud."

Although the improvement is easily understood by an examination of one of the drawings in the patent, it is not easy to describe it very succinctly.  The following excerpt from the description given by the complainant's expert states the peculiarities of the improved check:

"The patent shows and describes a check or other paper representing value, which is provided with one or more compound columns, each composed of two or more simple columns of figures of different denominations, arranged consecutively, the simple columns of each compound column being arranged out of line with and one below the other, so that a person wishing to tear off so much of the columns as is necessary for designating the amount for which the paper is made out, begins at the top and tears down along one of the simple columns, then across this simple column at the desired figure, then down along the next simple column and across the same at the desired figure, and so on, the paper being torn parallel with the length of the column until the desired figure is reached in the simple column, and then tears across the simple column being always made in one and the same direction,  *  *  * whereby a stepped end or edge of the paper is produced, and, when the ends of this stepped line are connected by a straight line this straight line will be an oblique line from the upper left corner to the lower left corner of the paper. The torn edge of the paper thus has an offset at each figure that is used to designate the value of the paper.  *  *  *  There are no projecting tongues, flaps, or wings formed on the end of the paper, and the tear is practically continuous in an oblique line, as no return movements are necessary in tearing off the paper in the manner I have described."

The single claim is as follows:

"A check or other paper representing value, provided with a table comprising one or more compound columns, each composed of two or more simple columns of figures of different denominations, the simple columns in each compound column being arranged out of line with and one below another, substantially as and for the purpose herein described."

The defendant corporation is a contractor, which prints the well-known postal money orders for the United States government, and which contain the identical improvement which is described and claimed in the complainant's patent. It was, like the revenue stamp which was the subject of discussion in Hollister v. Manufacturing Co., 113 U. S. 59, 5 Sup. Ct. 717, both new and useful, and the material question is whether it had the third requisite for patentability, and was the product of inventive skill. The two important devices which mark the pre-existing state of the art are shown in letters patent No. 163,462, dated May 18, 1875, to E. Rezean Cook, for an improved railroad ticket; and in English letters patent No. 1,906, dated May 27, 1873, to Frederick Stanfield for an improved means for preventing fraudulent alterations in bankers' checks. The Cook patent describes a railroad ticket which has two parallel rows of numbers arranged consecutively from the lower end upward. They indicate successive sums of money between any of which the ticket may be torn off, leaving one portion to inform the proper officer of the amount of fare received by the conductor. The columns are not arranged out of line with each other, and one below the other. The Stanfield invention is shown in 12 different forms. The one shown in Fig. 5 is the nearest approach to the arrangement of figures described in the patent in suit. It has a table containing three vertical rows of numerals, each having the lowest denomination at the bottom and extending upward in irregular order, the several vertical rows being out of line, and below each other. The column for thousands is at the bottom of the check. The following is a representation of No. 5:

London, 18

Messrs. .............................................................

Pay to..................................................................or Bearer

£1357.

The figures do not advance without a break, the tear begins at the bottom, and runs back and forth across the columns, so that a series of protruding tongues or tabs remains on the check after it has been cut from the stub; whereas the tear of the Berry check approaches an oblique line, is swiftly made, and leaves no protruding tongues of paper.

It will be remembered, as stated in the patent, that at its date, tables or rows of figures had been placed in consecutive order on the border of a check, so that the amount for which a check was drawn could be indicated by punching out the appropriate figures. The Cook ticket and the Stanfield check each arranged the tables so that the proper figures could be displayed by tearing from the table instead of by punching them out, but in each instance there must be two or more separate tears which run across the columns in different directions. The needed improvement was a rearrangement of the figures, so that those which were to be torn away could be torn across the columns in one direction by a natural oblique movement of the hand. This was easily done by arranging the columns in the Cook ticket out of line with each other, and one below the other, instead of having the columns in parallel lines,—an idea which Stanfield had already indicated. The necessary change of the Cook columns was

not the work of an inventor, but of an intelligent bank or money-order clerk of ordinary clerical skill, and the rearrangement of old methods did not call for inventive power. The decree of the circuit court is affirmed, with costs.