SHAMBOW v. NEW BEDFORD SHUTTLE CO.

(Circuit Court of Appeals, First Circuit. February 27, 1917.)

No. 1223.

PATENTS ☜328—INFRINGEMENT—SHUTTLE AND SHUTTLE EYE.

> The Daudelin patent, No. 737,714, for a shuttle and shuttle eye, conceding its validity, is limited to the precise construction of the device shown and described; as so construed, *held* not infringed.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by Christopher J. Shambow, executor, against the New Bedford Shuttle Company. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of Dodge, Circuit Judge, in the court below:

The plaintiff owns United States patent No. 737,714, issued September 1, 1903, to Pierre P. Daudelin, for improvements in shuttles and shuttle eyes, and sues the defendant company for infringement thereof, alleged to consist in the admitted manufacture and sale by it of shuttles with thread-eyes therefor of the construction shown by a specimen marked "Plaintiff's Exhibit No. 3 Defendant's Shuttle." This device is claimed to infringe all the three claims of the patent. Both the patented and the defendant's shuttle are "hand-threaded" and not "suction" shuttles. The use of shuttles of the latter kind has been forbidden by an act of the Massachusetts Legislature approved April 13, 1911 (St. 1911, c. 281).

In his specification the patentee states the object of his invention to be "to produce an improved shuttle which can be threaded either by hand for ordinary looms or automatically when used in so-called Northrop looms or the like," and that its main novelty consists in "my new thread-delivery eye and in means for preventing the filling from jumping out of the thread-slots in the shuttle when the shuttle is traveling."

The patentee's "new thread-delivery eye," as appears from his specification. is of metal, and is inserted endwise in a cylindrical aperture intersecting two

---

thread-slots all cut in the shuttle-body. One of these slots is diagonal and slants inwardly. It leads into the other, which is horizontal. The two form a "beak" by their intersection, under which the thread or filling is passed and by the under side of which it is guided, when the shuttle is being threaded, into the cylindrical aperture referred to and the thread-eye therein inserted.

Claim 1 is for the improved thread-eye, which comprises, according to claim:

"A lengthwise-chambered body portion having a lengthwise bottom slot, and tang at each of its opposite ends on one and the same side of the slot; the outer tang having an upwardly extending bend which forms, with the opposed end wall of the body, a guide space."

Claims 2 and 3 are for the above thread-eye in combination with "a shuttle having a beak and slots for the passage of the filling thereunder." The thread-eye is thus described in claim 2:

"Formed with a chambered body portion which is lengthwise slotted along its bottom and has a tang at each end on the rear side of said slot; and an overhanging projection at the inner end of the body portion, the outer tang being bent upwardly and forming, with the opposed wall of said body, a guide space for the filling."

And thus in claim 3:

"Communicating with the outer of said slots and comprising a chambered body having a lengthwise slot at its bottom portion, and at its outer end an upwardly bent tang which, with the opposed wall of the eye, forms a guide space for the filling."

There is nothing new in providing a shuttle with two thread-slots communicating with each other, intersected by a cylindrical aperture or shuttle-eye, and leaving between them a "beak" composed of the material of the shuttle-body wherein they are cut. All this had been before provided in hand-threaded shuttles as the means for enabling the thread to be drawn or carried, without sucking it, forwardly from the chamber containing the bobbin into a lateral or transverse shuttle-eye, and there to be so arranged that it will render properly through the eye from the bobbin during the shuttle's flight. Nor is there anything new in providing the shuttle-eye with a metallic bushing or "thread-eye" in order to protect the walls of the eye against wear by the moving thread. Such metallic bushing had been provided in suction shuttles which had no slots communicating with the shuttle-eye, and also in a variety of hand-threaded shuttles containing such slots with a "beak" between them. If there is novelty in the patent, it must be found in the particular construction and position of its "thread-eye" and the relation of the latter to the shuttle-eye and communicating slots wherewith it is to be used.

Further, it was not new with the patentee to provide the metallic thread-eye or bushing, necessarily itself provided with a slot or aperture for the admission of the thread, with a tongue, bar or "tang" at its outer end, so arranged as to prevent the thread, once introduced into it, from escaping out of it during the flight of the shuttle, into the communicating slots through which it had been introduced. Such tongues, bars, or "tangs" had sometimes been an integral part of the metallic thread-eye itself, or in other devices a metallic bar or staple separately attached to the shuttle-body and so located with reference to the outer end of the thread-eye as to permit introduction of the thread but to guard against the escape of the thread, once introduced, back into the admitting slot. Where a tongue, bar, or "tang" independent of the thread-eye itself had been used, it had also been relied on to keep the thread-eye in position in the shuttle-eye. When formed from the material of the thread-eye itself, frictional engagement of the latter with the shuttle-eye had been relied on for these purposes.

All the above seems to me found in one or the other of the prior patents relied on by the defendant, among them United States patents No. 319,866 to Thompson (1885), No. 568,207 to Northrop (1896), No. 729,141 to Daudelin, the patentee in this case (1903), and re-issue No. 12,531, also to Daudelin (1906).

The patentee's thread-eye appears to have been new in that (1) its position in the shuttle-eye is to be such as will bring its lengthwise slot for the admission of thread at its bottom, or under side, i. e., that side which will be lowest when the shuttle is in operating position; (2) its inner and outer tangs both project from it at the rear of its slot, i. e., from the side thereof nearest the

bobbin and its chamber, called in the patent the "cop" side; (3) it is held in position not only by frictional engagement with the sides of the shuttle-eye, but also by its inner tang, which is to be forced down into the bottom of the inwardly slanting diagonal slot in the shuttle-body which communicates with the horizontal slot therein leading to the slot in the thread-eye, and also by the engagement of the free end of the outer tang with the wood of the shuttle-body on the lower side of the horizontal slot; (4) the high point of the upwardly extending bend in its outer tang is carried well above the bottom of the thread-eye so as to form a guide space or depression between it and that portion of the under wall of the thread-eye which lies on the same side of the slot as that from which the outer tang projects and adjoins that tang where it projects.

It is stated in the patent that:

"At the inner end of the eye the filling is kept from escaping by the overhang 11 of the shuttle-body, the slot 5 extending downwardly and inwardly in reference to a vertical plane through the longitudinal axis of the shuttle."

This is claimed as still another novelty residing in the patented combination, but this, as it seems to me, is found in the patent to Northrop above referred to, if not in every shuttle wherein two intersecting threading slots, forming a beak between them, are cut, the lower of said slots being horizontal. This feature, at any rate, forms no part of the patentee's new thread-eye; if it appears at all as an element of the patented combination, it is only in claim 2, where the language used seems to describe it as part of the thread-eye itself. I must regard this feature as old in any aspect.

I am unable, in view of the above novel features, to find the claims wholly void because anticipated in the prior art. The defendant purchases the thread-eyes used in its shuttles from William H. Wilson, who makes them under United States patents to him Nos. 987,524 and 1,086,970, issued to him March 21, 1911, and February 10, 1914, respectively. The Patent Office proceedings upon Wilson's application for the latter patent are in evidence, from which it appears that among the representations upon which he obtained his patent, after a rejection of his application as fully met by the patent in suit, were the following:

"With the Daudelin structure, every time the thread is blown over the bend 8 of the tang 4, it is caught and broken and this causes such an amount of trouble that the device has never come into use.

"Applicant submits that he has greatly improved the Daudelin device by structural differences promoting a practical operative construction where such was not formerly present."

It was the examiner's opinion that the patent in suit was operative and that the differences introduced by Wilson were mere variations in form over it. With this opinion the examiners in chief who allowed Wilson's application could not have altogether agreed. The plaintiff has introduced evidence of practical tests made by it of the patented device, which evidence is sufficient to prevent me from holding that the patent is void because the patented device is inoperative. It remains true, however, that no shuttles having the thread-eye of the patent in suit have ever been commercially manufactured, sold, or used, although issued as long ago as 1903; and this tends to confirm the conclusion which, in the absence of evidence to the contrary, I think strongly indicated by all that appears regarding the prior art, that the patentee's new features, though they may, combined as he combines them, constitute an improvement of sufficient merit to be patentable, do not represent, at most, an advance in the art of any great value or importance; in no event such an advance as will warrant the broad construction of his claims for which the plaintiff contends. I am unable to find sufficient ground for holding that they can cover more than the specific construction which the patent describes.

The defendant's shuttle, said to infringe, has, like that of the patent, the horizontal and diagonal slots forming a "beak" between them, under which the thread is passed and by means whereof it is led from the bobbin into and so as to pass through a metallic thread-eye inserted into the transverse shuttle-eye and forming a bushing for the latter.

Of the novel features found as above in the patentee's thread-eye or shuttle containing it, only that indicated under (1) above seems to me found in the defendant's shuttle; i. e., the defendant's thread-eye has a longitudinal slot

and is so inserted in the shuttle-eye as to bring this slot at its bottom or under side. I do not think the defendant's shuttle can fairly be said to have any other of the said novel features. As to (2), its thread-eye has an outer tang projecting from the rear of the slot, but nothing that I can call an inner tang so projecting. On the contrary, except for the slot therein, the inner end of the defendant's thread-eye is cylindrical. As to (3), there being no longitudinally projecting inner tang helping to hold the thread-eye in position by its projection into the bottom of the diagonal slot in the shuttle, as with the patentee, opposing teeth, formed in the body of the thread-eye on each side of the slot, at the inner end thereof, by cutting away portions of the body, are adapted, according to the above patent to Wilson, No. 987,524, lines 79–81, to engage, not the bottom of the diagonal slot, in the shuttle, but the lower wall of the transverse passage therein, which I have called the shuttle-eye. These teeth, together with the insertion of one end of the outer tang into the shuttle-body, as below stated, help to prevent displacement of the thread-eye. As to (4), the outer tang of the defendant's thread-eye is neither "outwardly and downwardly projecting," nor is any portion of it formed with an "upwardly extending bend," within any meaning which I can consider reasonably belonging to those expressions in the patent. It is bent from its point or projection directly across the lower portion of the outer opening of the thread-eye, so as to lie just above the outer end of the slot with its upper edge in a straight horizontal line, its outer end then turning inward so as to enter the shuttle-body below the horizontal slot therein, not downwardly, as does that of the patent, but in the same horizontal direction. According to the patent, "a portion of the outer tang" is to be formed with the "upwardly extending bend" above referred to, "the high point of this bend being carried well above the bottom" of the thread-eye; but it follows from the defendant's construction that no portion of its outer tang is thus formed, that there is no high point of a bend therein to be carried above the bottom of the thread-eye, and that no "guide depression or space" is formed corresponding with that shown in Fig. 3 of the patent. The defendant's outer tang prevents escape of the thread from within the eye, but accomplishes that result by improved means more resembling those found in devices belonging to the prior art than the means adopted by the patentee.

The claims in suit do not cover every thread-eye having a lengthwise bottom slot. without regard to the other features specified in them; nor every hand-threaded shuttle containing the "beak" and slots wherein a thread-eye is used "slotted along its bottom" or "having a lengthwise slot at its bottom portion." The defendant's shuttle cannot be said to infringe merely because it embodies this feature. It does not appear that this feature, or any of the other features above thought to be novel with the patentee, would be patentable by itself and independently of the others. In view of the differences above referred to between it and the thread-eye or shuttle of the patent, I must hold that the defendant's shuttle does not infringe. It is shown to have had a considerable commercial success, which, as above stated, does not appear in the case of the patented device; but it cannot be said, in view of what appears, that this success was due to any embodiment in it of the invention covered by the claims in suit.

There may be a decree dismissing the bill, with costs.

Nathan Heard, of Boston, Mass. (Frederick A. Tennant, of Boston, Mass., on the brief), for appellant.

Marcus B. May, of Boston, Mass., for appellee.

Before BINGHAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PER CURIAM. This is an appeal from the decree of the District Court dismissing a bill brought for infringement of letters patent to Pierre P. Daudelin, No. 737,714, September 1, 1903, for shuttle and shuttle-eye

We deem it unnecessary to repeat matter already dealt with to our satisfaction in the opinion of the District Court. We find in that opinion no error which was prejudicial to the appellant. There is force in the appellee's contention that, in view of Figs. 3 and 5 of the patent to J. R. Northrop, No. 568,207, the District Court was too liberal to the plaintiff in allowing to the patent in suit novelty in the location of a slot at the bottom or underside of the thread-delivery eye.

But this does not require discussion; for, conceding this point to the appellant for the purpose of this appeal, we are satisfied with the reasoning and conclusion of the District Court.

The decree of the District Court is affirmed, and the appellee recovers its costs of appeal.