### SELECTASINE PATENTS CO. et al. v. PREST-O-GRAPH CO. et al.

(District Court, D. Oregon. August 2, 1920.)

No. 8388.

1. Patents ⬦328—1,254,764, for method of producing colored pictures, valid and infringed.

   The Owens, Beck & Steinman patent, No. 1,254,764, for a method of reproducing pictures and designs, by which multicolor pictures, having an embossed effect, are produced by means of a screen through which coloring materials are forced, each succeeding color overlaying those previously applied, except as to such parts as are successively blocked out by the application of shellac to the screen to render it impervious to the coloring matters, held not anticipated and valid, but limited by the proceedings in the Patent Office to the use of a single screen for applying all of the colors, and, as so construed, held infringed.

2. Patents ⬦65—To constitute anticipation, patent must be clear and specific.

   To be effective as an anticipation, a patent must be so clear and definite as to enable any mechanic skilled in the art to reach the patented invention certainly, directly, and without the necessity of experiment. and this rule is enforced with particular strictness when applied to a foreign patent.

3. Patents ⬦58—In infringement suit, anticipation must be proved beyond reasonable doubt.

   Where infringement is charged, the burden of proof is cast on defendant to establish anticipation beyond a reasonable doubt.

4. Patents ⬦49—Infringer cannot deny utility of invention.

   The fact that a defendant has infringed a patent is sufficient to establish its utility as against him.

5. Patents ⬦91(1)—Evidence to disprove joint invention must be clear and unequivocal.

   To overthrow the presumption of joint invention, created by the filing of a joint application on a joint oath, the evidence should be clear and unequivocal.

In Equity. Suit by the Selectasine Patents Company and the Selectasine System, Incorporated, against the Prest-O-Graph Company, a copartnership, and others. Decree for complainants.

Charles E. Townsend, of San Francisco, Cal., and Griffith, Leiter & Allen, of Portland, Or., for plaintiffs.

Atkins & Atkins, of Portland, Or., for defendants.

WOLVERTON, District Judge. The plaintiff Selectasine System, Incorporated, is the owner of certain letters patent, No. 1,254,764,

relating to "method of delineating or reproducing pictures and designs," by assignment from Edward A. Owens, Roy C. Beck, and Jacob H. Steinman, who are the alleged first inventors of the process which is the subject of the patent. Plaintiffs seek by the present suit to enjoin alleged infringement on the part of defendants.

Defendants interpose three defenses, namely: (1) That the alleged invention is without patentable novelty, and is not the product of inventive faculty, in view of the prior state of the art. (2) That the subject-matter of the patent was the conception of one only of the alleged three joint inventors. (3) That the methods which defendants employ in doing their work are not comprised by the patent, as is shown by the file wrapper, and therefore there is no infringement.

[1] Plaintiffs' patent is for a process, whereby multicolor pictures, having an embossed effect, are produced. The method of production is by use of a screen, consisting of bolting cloth or other material, through which coloring substances, such as paints and the like, are forced, by pressure applied by means of a scraper, or what is termed a squeegee, upon a background or surface upon which the picture is produced. An outline of the picture is first provided, according to the colors of which it is designed to be composed. The background or surface is given a base color, which covers the whole of it, such as green for instance. Such portions of the base color as are designed to be retained and form a shade in the picture are then traced out upon the screen, and blocked or stopped out, as it is termed, by the use of shellac or some substance that is impermeable by the paint or other coloring matter. The screen is then applied to the background, and the second color, such as blue, for instance, is pressed through the screen by the use of the squeegee, upon the background; the second color overlaying the first, except such of the first as has been blocked out on the screen. The blocking out process and the application of colors are repeated in the same way until all the colors of the design are produced upon the picture. The result is that each subsequent color overlays some portion of the previous colors, so that the last color applied always overlays in some area all the previous colors. Thus is produced a picture having an embossed effect, very attractive to the vision, especially when oil paints are used of such viscous consistency as to give such sensible thickness to the succeeding layers as to form plateaus of color. The screen, being stretched upon a frame, is so hinged upon or adjusted to another frame as to give exact register in outline of colors, as well as exact register of the weave of the screen fabric, upon each succeeding imprint.

I am giving but an outline of the process, so that the method employed for producing the picture may be understood. A reference to the specifications of the patent will clarify the details. It should be further stated that the required number of copies, as each color is projected upon the design, may be printed before another color is applied.

The present statement proceeds upon the hypothesis that but a single screen is used for producing the finished picture. Plaintiffs claim that the patent is broad enough to comprise the use of a plurality of screens, corresponding to the number of colors to be projected upon the

picture after the color forming the base is applied. Defendants controvert this, of which I will inquire later.

Logical sequence suggests inquiry first as to the patentability of the process. As anticipatory of the patent in suit, several patents are cited. Among others are those of Pirkis, Vericel, and Simon. The latter is an English conception. The first of these has to do with open stencils, several in number, so arranged as to be applied one after another, to produce a composite design, upon postcards and the like. In this there is no overlapping or building up of one color upon another to produce a plateau of color, and it is obvious there is no anticipation. The second combines the idea of the use of stencils, several in number, for producing floral designs and the like upon fabrics. The stencils are made of bolting cloth, or like material, by blocking or stopping out all parts of the bolting cloth, except some particular part of the design desired to be projected upon the fabric. A separate stencil is provided for each color going to make up the design, and each is applied to the fabric consecutively; the color being pressed through the stencil by means of a scraper. When all the stencils are thus applied, one after another, the design, which is composite in character, is complete. The distinguishing features of this process from the patent in question are the use of a separate stencil for each color applied and that there is no overlapping of colors.

The Simon patent is vague and obscure, and by no means readily understood. This much is obvious, however: That it employs a plurality of screens, made of chiffon, one for each color making up the design desired to be produced, through the blocking or stopping out method, by the use of "knotting," which is described as "a liquid sold by all paint and color merchants," and is probably a substitute for shellac as used by plaintiffs. Further, the specifications in the patent contain this extraordinary language:

"It is desirable that, where three tones of the same color make a form, then the whole of that form is placed on the first screen of that color; the form, less the first tone, on the second screen of that color; the form, less the first and second tones, on the third screen of that color."

It is possible to conceive that it was designed by the patentee that one tone in part should overlap another tone, but the language does not readily suggest the idea of laying color on top of color to form plateaus for giving the picture an embossed effect.

[2]. Such vague, indefinite, and ambiguous descriptions and delineations, especially when contained in a foreign patent, are far from sufficient upon which to predicate disclosure. The rule is that the reference, to be sufficient upon which to predicate anticipation, "must be so clear and definite as to enable any mechanic skilled in the art to reach the patented invention certainly, directly, and without the necessity of any experiment, and this rule is enforced with peculiar strictness when the alleged disclosure is found in a foreign patent or publication." Hoskins Mfg. Co. v. General Electric Co. (D. C.) 212 Fed. 422, 429; Seymour v. Osborne, 11 Wall. 516, 555, 20 L. Ed. 33; Berry v. Wynkoop-Hallenbeck-Crawford Co., 84 Fed. 646, 651, 28 C. C. A. 505; Westinghouse Air Brake Co. v. Great Northern Railway Co., 88 Fed.

258, 263, 31 C. C. A. 525; Consolidated Car-Heating Co. v. West End St. Ry. Co., 85 Fed. 662, 665, 29 C. C. A. 386.

If there is anything in practical suggestion in this Simon patent it is that multiple screens are to be employed in constructing the design or picture. I find nothing in these stencil patents anticipatory of plaintiffs' process of building color upon color in producing their multicolor picture designs, or which is calculated to produce the embossed effect which they claim for their product. I pass over the other references, as the three herein noted are the most pertinent for examination.

As it relates to the alleged prior use, the evidence upon which the contention is predicated is meager, and is without that positive and convincing character required to overcome the presumption of novelty that attends the issuance of the patent.

[3] It is obvious that the "Kissel Kar" pennant lacks the novelty in the process of construction that the specifications in plaintiffs' patent indicate. The testimony of Dibble and Heinrich shows, if it shows any-thing, that pennants were constructed in Vancouver, B. C.; but it is not such as to impel conviction that the same method was employed as that portended by plaintiffs' patent. Where infringement is charged, the burden of proof is cast upon the defendant to establish anticipation beyond a reasonable doubt. San Francisco Cornice Co. v. Beyrle, 195 Fed. 516, 518, 115 C. C. A. 426; Beckwith v. Malleable Iron Range Co. (C. C.) 174 Fed. 1001.

[4] The novelty and utility of plaintiffs' patent are established by the quick and eager response of the public to avail itself of the use thereof. John Kitchen, Jr., Co. v. Levison, 188 Fed. 658, 110 C. C. A. 424; Snow v. Kellar-Thomason Co., 241 Fed. 119, 123, 154 C. C. A. 119. The evidence amply shows this. Further the patent itself is prima facie evidence of both novelty and utility, and the fact that it has been infringed by the defendants is sufficient to establish its utility, at least as against them. Gandy v. Main Belting Co., 143 U. S. 587, 595, 12 Sup. Ct. 598, 36 L. Ed. 272.

Nor can I agree with counsel for defendants that plaintiffs' process is a mere aggregation of devices. The test of aggregation is lacking, which is that each device produces its own effect, unchanged by the others. Here the several devices of the combination co-operate each with the other in creating a novel result, both in the method adopted and in the thing produced. Hailes v. Van Wormer, 20 Wall. 353, 372, 22 L. Ed. 241.

The question of particular moment relates to whether the claimants by their patent are to be confined to the use of a single screen for realizing their process, or are the claims of their patent broad enough to comprise a plurality of screens; each being blocked out to conform to the laying on of succeeding colors of the design to be produced in the form of a picture. The solution of the problem requires a survey of the file wrapper.

Without attempting to trace the history of the allowance of the claims under the patent, it is sufficient to state that a rather sharp controversy arose between the attorneys for claimants and the patent examiner relative to the effect of certain references, including Simon,

Vericel, and Pirkis, above noticed, bearing upon whether petitioners were entitled to be allowed the use of multiple screens in their process. By the examiner's letter of February 21, 1917, it appears that claim 1 was rejected by reference to these three patents; it being held that they are "not necessarily limited to the use of a single screen, but that the same process could be carried out within the terms" of the claims "by the use of a screen for each separate color." By letter of March 23, 1917, petitioners' attorney made some verbal amendments, and requested a reconsideration of the rejection of claims, as amended, including also claim 11. In response, the examiner again rejected 1, 10, and 11, giving as his reason therefor that the language of claim 1, as also of claim 10, "is broad enough to mean that a single screen is used for the several colors; said screen, however, being differently blocked out for each successive color. The amendment to claim 11 does not render the same patentable."

To meet the objections of the examiner, the attorney requested a cancellation of claims 1, 10, and 11, and the insertion of claim 10, with renumbering of claims 1 to 9. With some verbal changes, the claims were finally accepted as embodied in the patent.

These are not the only rejections predicated upon like ground. On November 2, 1916, claims 1, 3, 9, and 10, as then presented, were rejected, because, it was said, the language was "broad enough to cover a process employing a screen for each separate color." In the earlier discussion of attorneys in avoidance of the Simon reference they say:

"It entirely fails to disclose the making of a multicolored picture by the use of a single screen, which is reblocked or partly filled in after each successive color application."

And again in the same letter, that of July 25, 1916, they say:

"One new feature of applicants' method is the employment of a single screen, which is gradually blocked out after each color application; that is, after one color has been applied, it is necessary to block out such portions of the screen as would cover the parts of that color that it is desired to retain."

The claims as finally allowed would seem to indicate that but a single screen was contemplated. 1, 3, 9, and 10 are the ones particularly relied upon as having been infringed. 1 and 3 specify "a single screen," and the language of the ninth and tenth is susceptible of interpretation as having relation to but a single screen. In reality, it is scarcely susceptible of a broader interpretation.

The claims should receive a reasonable interpretation, and it is only where the language is ambiguous and susceptible of different constructions that reference may be had to the file wrapper for clarification of the intendment of the patent. In discussing the construction of a patent, the Supreme Court (Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 222, 227 [26 L. Ed. 149]) has this to say:

"We do not mean to be understood as asserting that any correspondence between the applicant for a patent and the Commissioner of Patents can be allowed to enlarge, diminish, or vary the language of a patent afterwards issued. Undoubtedly a patent, like any other written instrument, is to be interpreted by its own terms. But when a patent bears on its face a particular construction, inasmuch as the specification and claim are in the words of the

patentee, it is reasonable to hold that such a construction may be confirmed by what the patentee said when he was making his application."

But it has been held, in effect, by this court that, where the claims allowed are not uncertain or ambiguous, the courts should be slow to permit their construction of the patent actually granted and delivered to be affected or controlled by alleged interlocutions between the officers of the Patent Office and the claimant. Fullerton W. G. Ass'n v. Anderson-Barngrover Mfg. Co., 166 Fed. 443, 92 C. C. A. 295, citing Westinghouse v. Boyden Power Brake Co., 170 U. S. 582, 18 Sup. Ct. 707, 42 L. Ed. 1136. The comprehensive rule is lucidly stated in Hubbell v. United States, 179 U. S. 77, 80, 21 Sup. Ct. 24, 25 (45 L. Ed. 95), as follows:

"It is well settled that the claim as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices. * * * It is quite true that, where the differences between the claim as made and as allowed consist of mere changes of expression, having substantially the same meaning, such changes, made to meet the views of the examiners, ought not to be permitted to defeat a meritorious claimant. While not allowed to revive a rejected claim, by a broad construction of the claim allowed, yet the patentee is entitled to a fair construction of the terms of his claim as actually granted."

"One who acquiesces in the rejection of his claim, because it is said to be anticipated by other patents or references, is not thereby estopped from claiming, and securing by an amended claim, every known and useful improvement which he has invented that is not disclosed by those references." National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693, 714, 45 C. C. A. 544, 565.

If, however, "an applicant, in order to get his patent, accepts one with a narrower claim than that contained in his original application, he is bound by it." Shepard v. Carrigan, 116 U. S. 593, 6 Sup. Ct. 493, 29 L. Ed. 723.

Now, to the interpretation: The specifications contain the statement that the method of reproducing pictures may also be applied, when necessary, in the form of a separate stencil for each color. Undoubtedly this indicates a purpose of the petitioners to avail themselves of the use of a plurality of screens in producing their designs. While the specifications may be considered where the scope of the claims is ambiguous or doubtful, they are not competent to vary the otherwise palpable intendment of the claims themselves. The examiner, it would appear from the file wrapper held tenaciously to the opinion from the first that the patentees were not entitled to claims broad enough to comprise a plurality of screens, or more than a single screen. The only seeming incongruity in his uniform holdings appears in the last above noted, wherein he says that the claim is broad enough to mean that a single screen is used for the several colors; but he refers back to the next previous holding, which is perfectly clear.

One of the most persuasive illustrations of the Simon process is the reproduction of several screens brought into the record by plaintiffs, designed to explain his method, being Exhibits 60a, 60b, and 60c. To this extent, the Simon patent is clear. It unquestionably teaches the use of a plurality of screens in the production of his designs, but it does not teach the use of a single screen for the production of pictures by the laying of color upon color, having an embossed effect, with clean-

cut marginal lines and perfect registration. It is possible, and perhaps practicable, to produce pictures of like character by the use of a plurality of screens, and in practical application these may be regarded as mechanical equivalents. Hunt Bros. Fruit Packing Co. v. Cassidy, 53 Fed. 257, 3 C. C. A. 525; Reece Buttonhole Machine Co. v. Globe Buttonhole Machine Co., 61 Fed. 958, 10 C. C. A. 194. But the difficulty with the patentees is that they have so specifically narrowed their claims as to comprise but a single screen. If it were not for this, I should be inclined to hold that the use of a plurality of screens was but the application of mechanical equivalents.

The patentees unwillingly accepted the narrower claims, but, notwithstanding, they must be held to be bound by them. If insistent upon the broader claims, their remedy was by an appeal. Shepard v. Carrigan, supra.

[5] It is further insisted, upon the part of the defendants, that the patentees were not joint inventors of the alleged patented process, but that Owens was the sole inventor, if the invention was patentable at all, and hence that the patent issued is void by reason of having been issued to the patentees jointly. The patent is at least prima facie valid as against this objection, and the burden was upon the defendants to establish its invalidity on this ground. Without reviewing the testimony pertaining to the subject, suffice it to say that, in my opinion, the testimony fails to overcome the prima facie validity of the patent.

"To overthrow the presumption of joint invention created by the filing of a joint application upon a joint oath, the evidence should be clear and unequivocal." Consolidated Bunging Apparatus Co. v. Woerle (C. C.) 29 Fed. 449, 451.

Further, it is said in De Laski & Thropp C. W. T. Co. v. Wm. R. Thropp & Sons Co. (D. C.) 218 Fed. 458, 463:

"This defense has, however. always been regarded as technical, and looked upon with disfavor by the courts, and clear and convincing proof has uniformly been required to sustain it."

See, also, Butler v. Bainbridge (C. C.) 29 Fed. 142, 143, and Sieber & Trussel Mfg. Co. v. Chicago Binder & File Co. (C. C.) 177 Fed. 439.

It is by no means clear and convincing, under the testimony, that the patentees are not joint inventors, and further comment is unnecessary.

Lastly, it is quite satisfactorily shown that the defendants have infringed plaintiffs' patent by the use of a single screen in producing their designs and pictures. This is apparent, as it relates to the Beaver Glove design and the Allen & Lewis advertisements, copies of which are in evidence; and the evidence tends strongly to show that the Pendleton Woolen Mills job, as it is termed, was produced in the same way. On the other hand, it is shown that the picture of the lady, Exhibit E, produced for the Ball Manufacturing Company was constructed through the use of a plurality of screens.

It results, therefore, that defendants should be enjoined from the manufacture of designs through the use of the single screen, but not through the employment of a plurality of screens, and that plaintiffs are entitled to a decree accordingly.