## UNIVERSAL OIL PRODUCTS CO. v. SKELLY OIL CO.

District Court, D. Delaware.   July 13, 1927.

No. 582.

**1. Patents ⬳328—1,281,884, for "cracking" petroleum oils, held not anticipated and valid, and claims 2 and 4 infringed.**

Trumble patent, No. 1,281,884, for process and apparatus for "cracking" petroleum oils, *held* not anticipated and valid, and claims 2 and 4 infringed.

**2. Patents ⬳58—Doubt as to anticipation should be resolved in favor of validity.**

Where evidence in support of defense of anticipation is doubtful, the doubt should be resolved in favor of validity.

In Equity. Suit by the Universal Oil Products Company against the Skelly Oil Company. Decree for complainant.

See, also, 12 F.(2d) 271.

Thomas G. Haight, of Jersey City, N. J., Samuel E. Darby, Jr., of New York City, Charles M. Thomas and William F. Hall, both of Washington, D. C., and Frank L. Belknap, of Chicago, Ill., for plaintiff.

William H. Davis, Frank E. Barrows, Raymond F. Adams, and John F. Neary, all of New York City, James H. Hughes, Jr., of Wilmington, Del., and W. P. Z. German, of Tulsa, Okl., for defendant.

MORRIS, District Judge. Process claims 1 to 3, inclusive, and apparatus claim 4, of patent No. 1,281,884, for converting heavy petroleum oils into light oils—cracking—granted to Trumble October 15, 1918, are here alleged by Universal Oil Products Company, the plaintiff, the owner of the patent, to have been infringed by Skelly Oil Company, the defendant. The defenses are anticipation, want of invention, and noninfringement.

Petroleum consists of a complex mixture of hydrocarbons differing in specific gravity and other properties. Separation of the lighter and the heavier constituents may be brought about by the physical process of simple distillation. Gasoline, a mixture of light hydrocarbons, was thus obtained. But the increasing demand for gasoline outran the supply to be had by this method. "Cracking" was resorted to. That is a chemical process. It is the conversion, by means of heat and (usually) pressure, of the complex hydrocarbon molecules of the heavier oils into the molecular structure of the desired lighter oils. But the process yields as well free carbon, heavier oils, and some incondensable gases. These products, particularly the

free carbon, gave rise to problems with which Trumble undertook to cope.

[1] Trumble was not a pioneer. Before he entered the field, stills of various designs had been employed. One was the large cylinder placed in or immediately above the fire. Another was the tube and tank still, in which the pipe extended through the heating zone from the bottom of a tank outside the furnace to the top of the tank. Another consisted of a pipe extending from the oil supply, through the heating zone, to a vaporizing chamber. The process employed in this still is known to the art as the once-through process. The oil, supplied continuously during the run to the intake end of the pipe, is subjected during its single passage through the fire zone to heat great enough to crack it. The methods of operation in the large cylinder were two. One was to conduct the operation with an isolated batch of oil. In the other a continuous supply of fresh oil flowed into the tank during the run, and degraded oil continuously flowed out. The process employed in the tube and tank still, in which a tube passing through the fire zone connected externally the two ends of the tank, was to cycle repeatedly through the system the isolated batch of oil with which the still was charged. It is with this cyclic process and apparatus that the patent in suit has to do. To the old cyclic system Trumble added a continuous intake of fresh oil and a continuous discharge of degraded oil. He claimed:

"2. The process of converting a heavy petroleum oil into a light one, which consists in circulating the heavy oil through a closed ring, continuously heating a portion of the ring, maintaining a pressure on the portion of the ring so heated, continuously taking off light vapors from the ring, continuously relieving the ring of a small amount of heavy oil, and continuously supplying fresh oil in sufficient quantities to maintain constant the volume of oil in the closed ring.

"4. An apparatus for converting heavy petroleum mixtures into light petroleum oils, comprising a heating means, a vapor releaser, means for conducting the heated mixture from the primary heating means to the vapor releaser, means for withdrawing light vapors from the vapor releaser, means for continuously withdrawing a portion of the mixture, means for forcing the residuum from the vapor releaser through the primary heating means, and means for injecting sufficient fresh heavy oil into said residuum to maintain the volume of oil in the apparatus approximately constant."

The defendant contends that the patents and publications of the prior art, other than those relied upon as anticipations, disclose the once-through process, the continuous intake and discharge of the shell or boiler still, and the closed ring; that no inventive skill was required to add a continuous intake and discharge to the process and apparatus of the cyclic still; and that consequently the claims are invalid, unless by reference to the specification the "small amount" of the discharge called for can be construed to mean an amount of discharge made small by sedimentation, as by a settling tank described in the specification. It denies infringement, because, it says, its discharge is not within the claims thus construed.

Patent to Burton, No. 1,049,667, illustrates the shell still employing the isolated batch cracking process. Patent to Stombs & Brace, No. 27,842, and patent to Barbet, No. 836,732, disclose the shell still operated with a continuous intake and a continuous discharge; the former for distillation, the latter for cracking. The patent to Benton, No. 342,564, and to Pielsticker, No. 477,153, illustrate the once-through process. Patent to Clark, No. 1,119,496, and the Burton-Clark still, modeled after the Babcock & Wilcox water boiler, typify the cycled-batch process of the tube and tank still.

Shell stills, howsoever employed, have inherent disadvantages. They are located in the fire zone and heated by direct contact of the flames and hot gases. By reason of the large quantity of oil in the shell, heat transference is poor. In case of wall rupture, the entire body of oil is discharged into the fire, with danger of great conflagrations and explosions. When employed in the cracking process, the deposit of carbon on the inner surface diminishes the heat transference, insulates the oil, brings about overheating, and consequent weakening, of the shell, with a probable blowing out of the hot spots, unless the run be terminated and the shell cleaned. The duration of run in the Burton still is thus limited to about 36 hours, after which about 24 hours are required for reconditioning the still. I find no evidence that a shell still having a continuous intake and discharge of oil has been commercially employed for cracking. No evidence showing that practice has demonstrated that the run of a shell still may be substantially prolonged by providing it with a continuous intake and discharge of oil has been pointed out.

That the pipes connecting the several stills in the Stombs & Brace set-up, were it

employed for cracking, would be quickly choked by deposits of carbon terminating the run, is, I think, quite clear. While the agitator or stirrer of Barbet may have been an aid to heat transference, and tended in some degree towards uniformity of temperature and composition of the body of oil, it was not put in practice, and consequently it remains to be established that by it the art progressed toward a solution of the carbon problem. By the once-through process of Benton, Pielsticker, and others, the time elapsing between compulsory shutdowns was much prolonged. But this advantage was gained at the expense of much added heat and consequent overcracking, with resulting increase of incondensable gases.

It seems to me that, while the once-through process was a demonstration that a continuous process could be advantageously employed in the once-through method, it was not a revelation that, or how, the desire for continuity could be otherwise converted into terms of practical means. The tube and tank cycled-batch Clark and Clark-Burton stills possessed the advantage of having the tank containing the mass of oil located outside the furnace; the advantage of better heat transfer in the pipe passing through the furnace and that of slower deposit of carbon in the heating zone by reason of the rapidity of the circulation through the pipe. But the run was nevertheless short, because the continuously precipitated carbon and the progressively heavier residuum were not discharged from the cycle or closed ring.

Trumble conceived the idea that the oil circulating in such closed ring might be maintained under constant conditions of temperature, pressure, and composition, and a consequent uniform product might be had by removing from the oil circulating in the ring the solid substances contained in the oil introduced into the apparatus, the solid or heavy hydrocarbons and free carbon formed in the apparatus, as rapidly as there introduced and formed. This he accomplished by continuously relieving the ring of a small amount of heavy oil holding in suspense the free carbon and foreign matter, and continuously supplying fresh oil in an amount equal to the vapors and heavy oils passing from the ring. That Trumble's process and apparatus possessed utility and advantages is disclosed, not only by the commercial practice of the Trumble process by him and the subsequent owner of the patent, but also by the comparison of the length of run of the Clark-Burton still, having no continuous in-

take and discharge of oil, approximately 48 hours, with the run of 17 days had by the defendant, which employs the Clark-Burton still, with a continuous intake and discharge of oil. This result the defendant obtains, notwithstanding the introduction of three to five tons of lime into the system during this period. During the defendant's run 30,000 pounds of carbon, in addition to the lime, are discharged in the residuum. The clogging of the system, which terminates the run, is brought about by the accumulation in the system of about 1,800 pounds of carbon and lime. Thus it appears that the life of the run is here prolonged by the continuous intake and discharge of the oil at least 1,600 per cent.

The Trumble process, which brings about a greatly lengthened run, is not, I think, as defendant seems to urge, a mere aggregation of old steps. It is more than a continuous intake and discharge of oil. It is so co-ordinating such intake and discharge that the oil circulating in the closed ring is maintained under conditions of temperature, pressure, and composition more nearly uniform than had hitherto been possible in other than the once-through system. It seems clear that Trumble by his process, which after the event might seem obvious (Johnson v. Forty-Second Street, M. & St. N. Ave. R. Co. [C. C.] 33 F. 499, 501), obtained in large measure the combined advantages of the shell still process and the once-through process, with an elimination of many of the disadvantages and detriments of each. Limiting the claims by construction to an amount of discharge made small by physical sedimentation, as in a settling tank, is not required by the specification, and is, I think, not made necessary by the prior art.

As the apparatus called for by claim 4 possesses the same degree of novelty, invention, and utility as do the process claims, it requires no separate consideration.

The evidence of the case, taken as a whole, in my opinion, unless there be anticipation, strengthens rather than destroys the presumption of invention which attaches to the grant of a patent.

For anticipation the defendant relies mainly, as I understand its position, upon Russian patent, No. 175 of 1891, to Schuchow & Gavrilow. But, though it seems difficult to understand, after Trumble's disclosure, how it was possible for these patentees to have a conception so nearly approaching that of Trumble and nevertheless miss it, yet my reading of the specification convinces me

that the thought of operating the apparatus with valves $P$ and $Q$ simultaneously open was never in their mind. The continuous operation spoken of in the patent was, I think, intended to convey the thought of a, once-through operation, or a once-through operation succeeded for a longer or shorter time by the cycled process without residuum discharge, which, in its turn, might be followed without interruption of continuity by recycling a fresh charge or by the once-through process.

[2] In any event, this patent does not possess that degree of clarity and certainty of meaning essential to enable it to be utilized as an anticipation. Selectasine Patents Co. v. Prest-O-Graph Co. (D. C.) 267 F. 840, 842; Atlantic, Gulf & Pacific Co. v. Wood (C. C. A.) 288 F. 148, 155. Patent to Edwards, No. 1,170,884, and patent to Smith, No. 1,239,423, issued after the filing of the Trumble application, but upon applications filed prior to the filing of the Trumble application, are, upon the authority of Milburn Co. v. Davis, etc., Co., 270 U. S. 390, 46 S. Ct. 324, 70 L. Ed. 651, likewise relied upon as anticipations of Trumble. Plaintiff, however, adduced evidence to carry Trumble's date of invention back to a time earlier than the filing date of either Smith or Edwards. An examination of this evidence, both oral and documentary, leads me to the conclusion, without substantial doubt, that Trumble not only had before Smith and Edwards the process of the patent in suit, but also that he was conscious of the advantages arising from the process, and that before Smith and Edwards he deliberately so employed the process as to reap these advantages in greater or lesser degree.

In figure 5 of patent to Henderson, No. 340,878, defendant finds, not only the continuous intake and discharge of oil, but also the closed ring of the patent in suit. But, though the dishes *42* were there inserted both as aids to circulation and as surfaces upon which the coke separating from the oil might be deposited, instead of on the bottom of the still, they do not, as I understand the patent in suit, constitute a closed ring within the meaning of that patent, inasmuch as the dishes are in a shell still located wholly in the fire zone, whereas heat is applied to only a portion of the closed ring of the patent in suit. In my view of the matter all the claims in issue are valid.

The defendant's process and apparatus come squarely within claims 2 and 4 as thus construed. Moreover I think that, were these claims of Trumble more narrowly construed,

the defendant would still be within them; for, though it discharges from the closed ring an amount of oil equal to 56 per cent. of the intake, yet it conducts this oil to a secondary vaporizer, in which, by means of the heat applied in the closed ring and a reduction of pressure, it vaporizes 41 of the 56 parts, and discharges as residue the remaining 15 parts, or 15 per cent. of the intake of fresh oil into the system. The defendant here has sedimentation by evaporation, the equivalent, I think, of the sedimentation of plaintiff's specification. Inasmuch as claim 1 differs from claim 2 in not calling for operation under pressure and as the defendant operates only under pressure, and as claim 3 calls for the conversion of the oil into foam as it passes through the heating zone, and I am unable to determine from the evidence that in defendant's process the oil is converted into foam as it passes through the heating zone, I do not find claims 1 and 3 infringed.

A decree in accordance with these findings must be entered.