## In re SPENCER.
### Patent Appeal No. 2622.

Court of Customs and Patent Appeals.
March 25, 1931.

HATFIELD and LENROOT, Associate Judges, dissenting in part.

Le Roi J. Williams, of Chicago, Ill. (Robert L. Kahn, of Chicago, Ill., Samuel Ostrolenk, of New York City, Delos G. Haynes, of St. Louis, Mo., and C. Bonifant Hamilton, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Appellant filed his application in the Patent Office for an improvement in thermostats. Attached to his application were a multitude of claims which unnecessarily and vexatiously clouded the issue. The examiner and the Board of Appeals both referred to this unnecessary duplication, and had it in mind while making allowance of certain claims to the appellant. The practice of filing unnecessary duplicates of claims, differentiated from each other by only the slightest change of language and with no material advantage to the applicant, cannot be too strongly condemned and is more often an indication of the inability of the pleader to properly state his case than of anything else. However, by abandonment and otherwise there are finally presented for our consideration eight claims which are as follows:

"22. A thermo-responsive controlling device comprising a pair of spaced supports and an initially stressed and curved bimetallic member resiliently secured between the supports."

"30. A thermo-responsive device consisting of a flexible bimetallic bow-shaped strip, and discrete means disposed at opposite ends thereof and adapted to initially stress and curve said strip, at least one of said means being resilient."

"37. A thermostatic device comprising a bimetallic thermostatic member, resilient discrete means operatively connected to one end thereof and maintained in a flexed condition in such a manner that upon change in temperature of said member, said means and said member are caused to suddenly change their respective shapes.

"38. A thermostatic device comprising an initially curved bimetallic strip and means

cooperating with the opposite ends thereof, adapted first to resist the tendency of said strip to change its curvature in response to strains within said strip due to temperature changes, and then to aid said strip in assuming its new shape in response to the strains induced therein by temperature changes, said strip delineating a simple curve at the beginning and end of its movement, but a compound curve at intermediate portions of its movements."

"40. A thermostatic device comprising a flexible bimetallic strip means cooperating with the ends thereof to cause said strip to have the shape of a simple curve at positions of stable equilibrium and to assume the shape of a compound curve at positions of unstable equilibrium."

"43. A thermostat comprising a bimetallic element, supporting means associated with the opposite ends of said element, the supporting means comprising a resilient element, both of said elements being initially maintained in flexed condition, a stationary contact member, and a movable contact member connected with said second element, one of said elements having a compound curve as it approaches an axis of pressure and then abruptly changing curvature for a quick separation of said contact members."

"45. A thermostat comprising a bimetallic element, supporting means associated with the opposite ends of said element, the supporting means cooperating with at least one end of said strip comprising a resilient element, both of said elements being initially maintained in flexed condition, a stationary contact member, and a movable contact member connected with said second element, said elements tending to increasingly stress and flex themselves as they approach a condition of instability and then to abruptly reverse their curvature for a quick separation of said contact members."

"54. A thermostat comprising a bimetallic element, a resilient mounting engaging the ends of said strip at points spaced apart a distance less than the distance between the same points of the strip when it is straight, so that the strip has two positions of stable equilibrium and one position of unstable equilibrium."

These claims were rejected by the Board of Appeals, which cited as pertinent references a German patent, No. 319,620, of March 12, 1920, and a United States patent to Schwimmer, No. 1,523,351, of January 13, 1925.

It is said by the appellant, and not denied by the solicitor of the Patent Office, that the Schwimmer patent is not a proper reference in this matter, inasmuch as appellant's application, being a divisional one, and referring to his application Serial No. 565,244 of June 1, 1922, antedates said Schwimmer patent. Under the rules of the Patent Office (Rules 41 and 42), the subject-matter of such divisional application must have been included in such original application. · The application of the appellant having been filed prior to the issuance of the Schwimmer patent, said patent cannot be cited here as a reference showing the prior art. Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68; Gray Tel. Pay Station v. Baird Mfg. Co. (C. C. A.) 174 F. 417; Johns-Pratt Co. v. E. H. Freeman Electric Co. (D. C.) 201 F. 356, affirmed in E. H. Freeman Electric Co. v. Johns-Pratt Co. (C. C. A.) 204 F. 288. We shall therefore disregard this reference in considering the matter.

Appellant's device consists of a bimetallic thermostatic strip in the form of a hollow rectangle having a curved and resilient spring steel member extending across the said hollow longitudinally, and rigidly connected to the opposite ends of the said thermostatic strip by rivets. This spring steel strip is so curved as to give laterally, when strain is placed upon it. The object of the invention, as explained in the application, specification, and drawings, is to provide a thermostatic strip which, when heated by an electric current to a certain degree, will open the electrical contacts with a sudden or snapping movement, thus preventing arcing and the destruction of the contact points.

Both tribunals in the Patent Office found that the invention had been anticipated by the aforesaid German patent, and it is to that point we shall refer ourselves. The German patent shows a thermostatic strip which is more easily understood from the following excerpt from the specification:

"a is a strip of spring tempered sheeting, bent twice at right angles. Upon the center piece which is slightly bent upwards, there is welded or soldered on a second plate strip b, the latter consisting of a metal with small expansion co-efficient. The center part is therefore a bi-metallic strip or a Breguet spring. Upon heating it tends to stretch and finally to bend through downward. The plate strip a with its ends is rigidly connected with an insulating piece c. The spring force of the vertical arms of the plate strip a opposes the stretching of the center part. The arising forces and counter forces which are always in

equilibrium, attain their maximum value if the spring is stretched in a straight line. At such moment the equilibrium or balance is an unstable one and there suffices the smallest further increase in temperature to bring about a sudden strong bending of the center part, inasmuch as the forces which were heretofore opposed are now acting in the same direction. This peculiarity of the arrangement is taken advantage of, in accordance with the invention, in order to bring about a sudden interruption of the current."

█ The appellant contends that his device and idea is not anticipated by said German patent, and he invokes the rule that the said reference being to a foreign patent, its disclosure must be so clear and definite as to enable any mechanic skilled in the art to construct the patented invention certainly, directly, and without the necessity of any experiment. That this is the law must be conceded. In re Gillam, 37 F.(2d) 959, 17 C. C. P. A. 877; In re Crowell, 39 F.(2d) 681; 17 C. C. P. A. 1009; Selectasine Patents Co. v. Prest-O-Graph Co. (D. C.) 267 F. 840; Permutit Co. v. Harvey Laundry Co. (D. C.) 274 F. 937; Warren Bros. Co. v. Owosso (C. C. A.) 166 F. 309.

The question as to whether the German patent involved is sufficiently explicit so that any one skilled in the art might so construct it that it would anticipate the appellant's device, is one of some difficulty. Incorporated in the record are the affidavits of scientists of note, who assert that they have experimented with devices constructed as shown in the specification of the German patent, and that it will not operate in the way set out in the appellant's application, and in the way in which it is conceded his device will operate. All of these affiants unite in stating that a device constructed as shown by the German specification will separate the contact points slowly, and will not snap suddenly into position unless constructed with vertical members of such thickness as to practically constitute rigid members. The principal controversy in this respect is as to the exact conception of the German applicant, it being contended on the part of the appellant here that the German applicant had a conception of a device in which the thermostatic strip would, by the influence of the heat, change from an upward bowed form to a straight line, and then would break the contact by bowing in the other direction. In this respect it is demonstrated by the scientists who have filed affidavits here, and is admitted by the Board of Appeals in its written decision, that in order to have such

a thermostatic strip suddenly change its position with a snap, it must do so as the result of compound curves induced by the action of the heat, and not as the result of having assumed first a straightened position and then a curve opposite to its first curved form. The Board of Appeals, however, is of the opinion, in spite of this fact, that it is within the scope of knowledge of anyone skilled in the art to so construct the vertical side supports of this thermostatic strip that such compound curving and consequent sudden change of position will result.

█ As we have said, the case is one of much difficulty. It is quite apparent the appellant here has a device which will perform a very useful and desirable process. It is not clear that the German applicant had either a mental conception of the same thing, or of a device with which it might be brought about. It is true that in the German application it is stated that a sudden change of position in the thermostatic strip is the end to be accomplished, but it is equally true that the concept which he seems to have had would not have brought about such a result. The construction of the devices, also, is not the same. Hence, it is one of those cases, in our opinion, where the applicant is entitled to the benefit of the doubt, and should be allowed to have any protection which the Patent Office may give him.

Claims 22, 30, and 54 are so general as to read upon the said German application, and hence are not properly allowable. Claims 37 and 45 do not contain the element of a device which will cause a compound curve of the thermostatic strip while operating, but depend for their force and effect upon an abrupt reversal of curvature of the strip. It is argued by the solicitor for the Patent Office that such recital is of the function of the device and is therefore not patentable under In re Hammond, Jr., 37 F.(2d) 760, 17 C. C. P. A. 803. The same argument is offered as to claims 38, 40, and 43, in which claims the element of a device causing a compound curve is recited. We agree with this contention as to said claims 37 and 45. Nothing is therein stated which will confine the device to any particular form and hence these claims, omitting the functional features, may also be read upon the German reference.

Claims 38, 40, and 43 are, in our opinion, allowable. The recitation therein of the compound curve created in the thermostatic strip, in view of the device disclosed in the specification and drawings, cannot properly be said to be the recital of a function but rather to be a

recital in aid of the related description of the device itself. Claims 38, 40, and 43 will therefore be allowed and patent will issue thereon. The decision of the Board of Appeals is, in all other respects, affirmed.

Modified.

HATFIELD, Associate Judge (concurring and dissenting).

I concur in the majority opinion so far as it affirms the decision of the Board of Appeals holding that claims 22, 30, 37, 45, and 54 are not patentable.

I am of opinion that claims 38, 40, and 43, so far as they may be differentiated from the prior art, are functional in character, and that therefore the decision of the Board of Appeals, rejecting those claims, should be affirmed.

LENROOT, Associate Judge, concurs in the above concurring and dissenting opinion.