**NYE v. COE, Com'r of Patents.**
**Civil Action No. 7407.**

District Court of the United States for the District of Columbia.
April 13, 1942.

G. F. DeWein and H. S. Silver, both of Milwaukee, Wis. (P. E. Henninger, of Washington, D. C., of counsel), for plaintiff.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for defendant.

McDUFFIE, District Judge.

This is a suit brought under the provisions of Section 4915, Revised Statutes, 35 U.S.C.A. § 63, by the plaintiff, Henry V. Nye, against Conway P. Coe, Commissioner of Patents, defendant, in which it is sought to have the Court find that plaintiff is entitled, according to law, to receive a patent for his invention as specified in claims 14, 16, 20, 21, and 22 of his application, Serial No. 15,999, filed April 12, 1935, as set forth on pages 2 and 3 in the Amended Complaint.

It is admitted that the disposition and showing in Figure 4 of the preferred embodiment of the British patent 371,340, upon which the defendant relied as a bar to the issuance of a patent to the plaintiff in this cause, does not of itself bar the grant of a patent to plaintiff on his claims 14, 16, 20, 21 and 22.

It is likewise admitted that the Hobson patent, U. S. 2,159,829, is no bar to the relief sought by the plaintiff and therefore the only question in this case is whether or not the modification of the preferred embodiment in lines 86 to 93, page 1, of the British patent 371,340, teach the invention of plaintiff's claims 14, 16, 20, 21 and 22.

Lines 86 to 93, page 1, of the British patent are as follows: "In a modification of the preferred embodiment of the invention, an aperture in the enclosing box is provided adjacent each of the pairs of cooperating contacts so that the pressure developed within the box may be effective to scavange the products of combustion formed at both points of interruption."

The patent sought by plaintiff in his above entitled application is for an invention including an improved oil circuit breaker provided with oil-immersed series-connected pairs of arcing contacts within a baffle structure forming an enclosure confining the oil therein. Freely venting (similar or identical) ports are provided in the baffle structure (enclosure) immediately adjacent each pair of separable contacts thus providing immediate venting of the electrically conductive gases and metallic vapors formed by the arcs. By providing similar or identical ports similarly positioned relative to the separable arcing contacts, these conductive gases and metallic vapors are immediately vented equally from each arcing region, thereby maintaining the oil between those arcing regions as a barrier definitely assuring isolation of one arcing region from the other. Such isolation of the arcing regions prevents intermixing of the highly conductive gases

with the oil that is utilized for extinguishing the arc, so that the (electrically insulating) oil would remain a mechanical barrier between the pairs of contacts and the arcs be drawn down into intimate contact with the cool oil.

By providing equal venting and the consequent assurance of an effective barrier between the arcing regions in a circuit breaker, the plaintiff has obtained therein a greater uniformity of operation than was obtainable in prior art circuit breakers. By providing for immediate and free venting of the conductive gases, a circuit breaker embodying the invention of claims 14, 16, 20, 21 and 22, was found to be superior to circuit breakers of the prior art as typified by the cross blast circuit breaker of the British patent 371,340 relied upon by defendant. This superiority is evidenced by operation with less arcing time, arc length, arc energy and pressure (as admitted by the defendant, T. 124 to 137).

As shown by plaintiff's Exhibits 2, 3, 4 and 5 and the testimony (T. 32 to 36), this invention developed not from a cross blast type of breaker shown in British patent 371,340, but instead from the explosion pot type of circuit breaker. By providing for immediate and free venting of the electrically conductive gases and metallic vapors, pressures could be reduced and extinguishing action of the oil on the arc could begin immediately without wasting the time consumed by drawing the arc into the throat as in the explosion pot type of circuit breaker. This action was provided, as shown in plaintiff's Exhibits 2 and 3, by placing a port in the enclosure surrounding the arcing region immediately adjacent the separable contacts.

This concept of invention was applied to a two-break circuit breaker as shown in plaintiff's Exhibit 3 by placing one freely vented explosion pot around each pair of separating contacts (T. 34). It was then conceived that a single enclosure could be provided for two pairs of series-connected arcing contacts in a single enclosure with the mechanical barrier replaced by a barrier of oil, if the ports immediately adjacent the pairs of separating contacts were so positioned and related in size so that equal venting was obtained therethrough (T. 36). This concept is embodied in Plaintiff's Exhibit No. 5 and any seeming resemblance to the structure of Fig. 5 of British patent 371,340, is entirely coincidental, as the cross blast structure in Fig. 4 was developed on an entirely different theory and principle of operation, that is, as a refinement of prior circuit breakers utilizing interaction of one arc on another.

The preceding four paragraphs constitute what the court believes to be an accurate and fair description of the plaintiff's invention, and were copied from his brief.

Upon a casual reading of the modification of the preferred embodiment of the British patent 371,340, the language impresses one as an anticipation of the plaintiff's claim, but upon a careful study and analysis of that language, together with Figure 4 of the British patent referred to, one becomes more and more convinced that the writer of the modification was in a field of speculation or prophesy. It becomes more and more difficult, and indeed impossible to read in lines 86 to 93 a full and clear disclosure of the Nye invention defined by claims 14, 16, 20, 21 and 22, as to both structure and contemplated functional utility such as to warrant a denial of plaintiff's right to these claims.

It is not difficult to understand how an examiner could read in the modification of the British patent the anticipation claimed for it, after actually having before him the plaintiff's invention. This, however, would mean the exercise of "hindsight" as that rather expressive word was used by Mr. Justice Stephens in the case of Becket v. Coe, 69 App.D.C. 51, 98 F.2d 332, 336, in which he said: "With the Becket application before us it is possible to look back upon the Hadfield (French) and Commentry (French) patents and to say that they suggested what he found, but such hindsight should not, we think, defeat his application. Hadfield and Commentry seem neither to have sought nor to have found an alloy which is both stainless and deep-drawing, and though it be true that the scope of their ranges embraces the claims of Becket, this speaks of the extent of their desire rather than of the breadth of their discoveries."

The reasoning in the Becket case dealing with the patentability of an alloy is applicable to the issue here under consideration. Especially is this so as to the claim of anticipation in a foreign patent in which there is a lack of clarity or reasonable certainty, as to what the desired results of such discovery are, and how they can be accomplished. The use of the words "the

pressure developed within the box may be effective to scavange the products of combustion" is not a definite statement that such pressure was, had been, or would be so effective. Likewise, the words "an aperture provided adjacent each of the pairs of contacts", read in the light of the preferred embodiment of the British patent, may or may not mean apertures directly opposite each other and adjacent to the pairs of contacts at the points of interruption.

The cross blast theory was undoubtedly in the mind of the British patentee, and the additional aperture may have been provided in the top of the baffle, "adjacent the opposite pairs of contacts". No one could say that the modification contains words clearly indicating the isolation of one arc from another, and equal venting through apertures identical in size, the creation of a barrier between the arcs by the oil itself, and the results in more efficient circuit breaker operation. The only way to obtain such results was by exercise of inventive genius and much experimentation.

It is not unreasonable to believe the British patentee, had he known the results or discovered the advantages of his modi-·fication over the breaker he preferred and patented, the modification rather than the disclosures shown by Figure 4 would have been claimed as his preferred embodiment. Indeed, the fact that four years after the issuance of his patent 371,340, he applied for and obtained British patent 445,150, in which the Nye claims here are described, shown and claimed, is most persuasive that he was merely hoping, guessing or prophesying, when he wrote the modification of his preferred embodiment. While we cannot say what a foreign patent office should or would do, it is reasonable to assume that British patent office would not have granted another patent on claims set out in the modification of the preferred embodiment of a patent theretofore granted to the applicant, if that office found the modification anticipated the claims of patent 445,150.

This court is not unmindful of the rule that a patentee need not describe in minutest detail, make experiments, and accompany his descriptions with sketches or drawings, in order that his disclosure may be an anticipation, yet the rule is also clear that before a disclosure can be held to be an anticipation, its language or claims must be so certain and descriptive, that one skilled in the art or one who has been termed a journeyman or an artisan, can visualize therefrom, specifically, definitely and in detail, the type of device or construction that was in the mind of the patentee who described it. The test adopted by a British Court, quoted in the Skelly Oil Co. v. Universal Oil Products Co., 3. Cir., 31 F.2d 427, 431, is stated as follows: "Would a man who was grappling with the problem solved by the patent attacked, and having no knowledge of that patent, if he had had the alleged anticipation in his hand, have said: 'That gives me what I wish'?"

Could a mechanic "skilled in the art", by reading a modification of the British patent, certainly, directly, and without the need of any experimentation, have reached the invention of the plaintiff's claims? If in order to perfect the plaintiff's device, upon reading the modification lines 86 to 93, it necessitated extensive experimentation as well as the genius of an inventor, the plaintiff's invention is patentable.

While a simple improvement on a patent would not, as a rule, entitle an applicant to a patent on such improvement, an improvement arrived at on a different theory, producing definitely different results, and resulting in a superior and more useful instrument, must be held to be the result of inventive genius and is patentable.

If a patentee, by a modification which is so lacking in certainty that it shows he is wandering in an unexplored field, could have barred the issuance of patents to others, recognition and reward for long and laborious effort would have been denied to many inventive genii who have contributed so much to almost every phase of human progress. The rule as to clarity, details in construction, specification of performance and results obtained, in an anticipation based upon the claims of a foreign patentee, is, and has long been, adhered to and strictly observed by our courts.

In the case of Selectasine Patents Co. et al. v. Prest-O-Graph Co. et al., 267 F. 840, 842, the rule as to the efficiency of a reference upon which to predicate anticipation was stated by a District Court in Oregon as follows: "The rule is that the reference, to be sufficient upon which to predicate anticipation, 'must be so clear and definite as to enable any mechanic

skilled in the art to reach the patented invention certainly, directly, and without the necessity of any experiment, and this rule is enforced with peculiar strictness when the alleged disclosure is found in a foreign patent or publication.' Hoskins Mfg. Co. v. General Electric Co., D.C., 212 F. 422, 429; Seymour v. Osborne, 11 Wall. 516, 555, 20 L.Ed. 33; Berry v. Wynkoop-Hallenbeck-Crawford Co. [2 Cir.], 84 F. 646, 651, 28 C.C.A. 505; Westinghouse Air-Brake Co. v. Great Northern Railway Co., [2 Cir.], 88 F. 258, 263, 31 C.C.A. 525; Consolidated Car-Heating Co. v. West End St. Ry. Co., 85 F. 662, 665, 29 C.C.A. 386."

Again in Davies v. Coe, 65 App. D.C. 345, 83 F.2d 602, 603, the Court restated the rule: "The disclosure of a foreign patent is to be measured not by what may be made out of it, but what is clearly and definitely expressed in it. In re Ek, 57 App.D.C. 203, 19 F.2d 677; Carson v. American Smelting & Refining Co. [9 Cir], 4 F.2d 463."

In American Stainless Steel Co. v. Ludlum Steel Co., 2 Cir., 290 F. 103, 106, the Court said: "* * * it requires more than prophecy of what may be done, or than declarations of what ought to be accomplished, to make a good *patent reference*, not to speak of *anticipation*. It is necessary to show with reasonable certainty how the desired result can be accomplished." (Italics supplied)

In Skelly Oil Co. v. Universal Oil Products Co., 3 Cir., 31 F.2d 427, 431, the rule is again stated that: "Inferences as distinguished from disclosures, especially when drawn in the light of after events, cannot be accepted as a basis of anticipation. A patent relied upon as an anticipation must itself speak."

In Carson v. American Smelting & Refining Co., 9 Cir., 4 F.2d 463, 465, the rule as to anticipation in a foreign patent was forcefully stated: "A foreign patent is to be measured as anticipatory, not by what might have been made out of it, but by what is clearly and definitely expressed in it. An American patent is not anticipated by a prior foreign patent, unless the latter exhibits the invention in such full, clear, and exact terms as to enable any person skilled in the art to practice it without the necessity of making experiments."

The above precedents are quoted to illustrate how our courts have measured the claims on foreign patents set up as anticipations and references. The more the lines 86 to 93 are studied, the more one is convinced that they do not meet the tests laid down in the cases referred to.

In passing on the language in issue here, which, if sufficient in certainty, would serve as an anticipation, it should be borne in mind that we are not considering solely the preferred embodiment of the British patent but a variation or a modification of what the patentee claimed as his perfected device. This of itself reasonably suggests the inquiry whether he really knew or believed his modification in fact was a meritorious claim, or whether he was guessing, prophesying or hoping that it might be.

Turning again to the words "effective to scavange the products of combustion formed at both points of interruption", no doubt another aperture would serve to exhaust the gases at each port, but the plaintiff's device does more than that, and it cannot be surmised by reading the lines 86 to 93, that the patentee, when he wrote the modification, was certain that the vent of the gaseous elements would be equal; that the arcs would be separated, and the oil itself would serve as a barrier between the arcs.

This court is not unmindful of the rule that the decisions of the Patent Commissioner are presumed to be fair, correct and legal, yet this court, in a de novo hearing in equity on the merits of the controversy, feels that such a presumption alone should not serve to deny the applicant the fruits of his genius and labor. No one questions the soundness of a presumption that officials do their duty, and there has been no charge here that their findings are other than fair and correct as they saw the facts. None of us, however, can be said to be free from possible error, and in passing on the merits of causes like this, the language of Judge Learned Hand in the case of Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794, is impressive as he refers to one "skilled in the art": "An invention is a new display of ingenuity beyond the compass of the routineer, and in the end that is all that can be said about it. Courts cannot avoid the duty of divining as best they can what the day to day capacity of the ordinary artisan will produce. This they attempt by looking at

the history of the art, the occasion for the invention, its success, its independent repetition at about the same time, and the state of the underlying art, which was a condition upon its appearance at all. Yet, when all is said, there will remain cases when we can only fall back upon such good sense as we may have, and in these we cannot help exposing the inventor to the hazard inherent in hypostatizing such modifications in the existing arts as are within the limited imagination of the journeyman. There comes a point when the question must be resolved by a subjective opinion as to what seems an easy step and what does not. We must try to correct our standard by such objective references as we can, but in the end the judgment will appear, and no doubt be, to a large extent personal, and in that sense arbitrary."

After much consideration and examination of precedents affecting the issue presented here, this court is of the opinion that the disclosure in the modification of the preferred embodiment of the British patent 371,340, lines 86 to 93, page 1, do not teach the invention of the plaintiff Nye, and do not bar the granting of a patent to him on his claims 14, 16, 20, 21 and 22, as set forth in his application serial number 15,999. An order to this effect has been entered.